# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE

DAVID SULLIVAN, DARLENE ROBERTSON, AND CHARLES CUMMINS, Individually and on behalf of others similarly situated, )))))))

      Plaintiff-Appellants, )

v. )   No. 24-5531

METRO KNOXVILLE HMA, LLC dba Tennova Healthcare )))))

*Appeal from the United States District Court for the Eastern District of Tennessee*

      Defendant-Appellee. ))))

---

## BRIEF OF PLAINTIFF-APPELLANTS

---

JESSE D. NELSON (TN BPR # 025602)
CLINT J. COLEMAN (TN BPR # 038413)
NELSON LAW GROUP, PLLC
10263 Kingston Pike
Knoxville, Tennessee 37922
(865) 383-1053
*jesse@NLGattorneys.com*
*clint@nlgattorneys.com*

*Attorneys for Appellants*

ORAL ARGUMENT REQUESTED

## CORPORATE DISCLOSURE FORM

1.    Is Appellant a subsidiary or affiliate of a publicly owned corporation? If yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.


2.    Is there a publicly owned corporation, not a party to the appeal, which has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE FORM ............................................................. i

TABLE OF CONTENTS ............................................................................. ii

TABLE OF AUTHORITIES ...................................................................... 1

STATEMENT IN SUPPORT OF ORAL ARGUMENT .................................. 5

JURISDICTIONAL STATEMENT ............................................................. 6

STATEMENT OF THE ISSUES ................................................................ 7

STATEMENT OF THE CASE ................................................................... 8

    1.    David Sullivan .................................................................... 8

    2.    Darlene Robertson ............................................................. 9

    3.    Charles Cummins .............................................................. 9

    4.    Kein Myers and Defendant's Reduction in Force ........................ 9

        a.   Kevin Myers' relationship with Appellants. .................................. 9

        b.   The logistics of the RIF and its subjective metrics ....................... 11

        c.   The RIF spreadsheet's completed scores .................................... 13

        d.   Kevin Meyers tells Larry Rupard he has enough old people ......... 15

        e.   Defendant brings in new deskside employees prior to the RIF. . 16

SUMMARY OF THE ARGUMENT ............................................................ 18

STANDARD OF REVIEW ...................................................................... 21

ARGUMENT ....................................................................................... 22

    1.    Appellants easily establish the elements of their prima facie case. 22

        a.   The ADEA – generally. ........................................................ 22

        b.   Appellants undoubtedly meet their prima facie burden. ........... 24

    2.    The district court erred in finding that Appellants failed to show that the reason given for their respective terminations was pretext for discrimination. Specifically, the lower court improperly viewed the instances of pretext individually, rather than in their combined totality, to conclude that no individual instance presented sufficient

pretext. ....................................................................... 29

   a.  Myers' Ageist comments. ............................................ 32

   b.  Myers' use of subjective scoring despite his limited personal interaction with Appellants. ....................................... 35

   c.  Every employee selected as part of the RIF was over 40. ........... 38

   d.  Evidence of pretext and questions of fact regarding each Appellant, respectively. .................................................... 39

      i.   Evidence of pretext as to Appellant David Sullivan. ......... 39

      ii.  Evidence of pretext as to Appellant Charles Cummins. ... 42

      iii.  Evidence of pretext as to Appellant Darlene Robertson. . 43

CONCLUSION ............................................................. 45

CERTIFICATE OF COMPLIANCE ............................................ 46

CERTIFICATE OF SERVICE .................................................. 47

DESIGNATION OF DISTRICT COURT DOCUMENTS ............................. 48

# TABLE OF AUTHORITIES

<u>Cases</u>

*Asmo v. Keane, Inc.*,
   471 F.3d 588 (6th Cir. 2006) ..................................................... 21

*Barnes v. GenCorp*,
   896 F.2d 1457 (6th Cir.1990)....................................................20

*Beck v. Buckeye Pipeline Services Co.*,
   501 Fed. Appx. 447 (6th Cir. 2012) ..................................... 22, 32

*Bevan v. Honeywell, Inc.*,
   118 F.3d 603 (8th Cir.1997) .....................................................30

*Blair v. Henry Filters, Inc.*
   505 F.3d 517 (6th Cir. 2007) .................................................... 27

*Blizzard v. Marion Technical Coll.*,
   698 F.3d 275 (6th Cir. 2012).................................................... 19

*Browning v. Dep't of the Army*,
   436 F.3d 692 (6th Cir.2006)............................................... 22, 33

*Bush v. Dictaphone Corp.*,
   161 F.3d 363 (6th Cir. 1998).................................................... 29

*Cline v. Catholic Diocese of Toledo*,
   206 F.3d 651 (6th Cir.2000)............................................... 20, 21

*Comer v. Bethesda Hosp., Inc.*,
   370 F.3d 499 (6th Cir. 2004).................................................... 26

*Connell v. Bank of Boston*,
   924 F.2d 1169 (1st Cir. 1991)............................................... 15, 27

*Conway v. Electro Switch Corp.*,
   825 F.2d 593 (1st Cir.1987).....................................................30

*Dennis v. Columbia Colleton Medical Center, Inc.,*
          290 F.3d 639 (4th Cir. 2002)....................................................28

*Ercegovich v. Goodyear Tire & Rubber Co.,*
          154 F.3d 344, 356 (6th Cir. 1998) ...................................... 30, 31

*Geiger v. Tower Automotive,*
          579 F.3d 614 (6th Cir. 2009)......................................................29

*Goldman v. First Nat. Bank of Boston,*
          985 F.2d 1113 (1st Cir. 1993) ....................................................28

*Grano v. Dep't of Dev. of Columbus,*
          699 F.2d 836 (6th Cir.1983) .............................................. 23, 33

*Gross v. FBL Fin. Servs., Inc.,*
          557 U.S. 167 (2009) ................................................................ 27

*Harris v. Group Health Assn.,*
          662 F.2d 869  (D.C.Cir.1981) ............................................ 22, 33

*Hazen Paper Co. v. Biggins,*
          507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993).............. 19

*Herring v. Thompson,*
          2003 WL 23590541 (D. Md. May 12, 2003) .............................28

*House v. Rexam Beverage Can Co.,*
          630 F. App'x 461 (6th Cir. 2015) .............................................. 19

*Johnson v. Franklin Farmers Co-op.,*
          378 F. App'x 505 (6th Cir. 2010) ............................................. 21

*Local 13000, United Steelworkers of America v. Parson,*
          411 U.S. 968, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979) .......... 22, 33

*National Enterprises v. Smith,*
          114 F.3d 561 (6th Cir.1997) ..................................................... 18

*Parson v. Kaiser Aluminum & Chemical Corp.,*

575 F.2d 1374 (5th Cir. 1978) ............................................... 22, 33

*Pelcha v. MW Bancorp, Inc.,*
         455 F.Supp.3d 481 (S.D. Ohio, 2020) ....................................... 25

*Provenzano v. LCI Holdings, Inc.,*
         663 F.3d 806 (6th Cir.2011) ...................................................... 20

*Pullman Standard v. Swint,*
         456 U.S. 273, 102 S.Ct. 1781 (1982) ........................................ 18

*Rowan v. Lockheed Martin Energy Systems, Inc.,*
         360 F.3d 544 (6th Cir. 2004) ..................................................... 21

*Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.,*
         690 F.2d 88 (6th Cir.1982) ................................................. 22, 33

*Rowe v. General Motors Corp.,*
         457 F.2d 348 (5th Cir. 1972) .............................................. 22, 33

*Schoonmaker v. Spartan Graphics Leasing, LLC,*
         595 F.3d 261 (6th Cir.2010) ...................................................... 20

*Shockley v. Morristown-Hamblen Hosp. Assoc.,*
         No. 2:16-cv-257, 2018 WL 11372776 (E.D. Tenn. Oct. 16, 2018)
         .............................................................................................. 26

*Singfield v. Akron Metro. Hous. Auth.,*
         389 F.3d 555 (6th Cir. 2004) ..................................................... 27

*Talley v. Family Dollar Stores of Ohio, Inc.,*
         542 F.3d 1099 (6th Cir. 2008). ................................................. 26

*Taylor and Gaskin, Inc. v. Chris–Craft Indus.,*
         732 F.2d 1273 (6th Cir.1984) .................................................... 18

*Texas Dept. of Comm. Affairs v. Burdine,*
         450 U.S. 248 (1981) ............................................................15, 28

*Tingle v. Arbors at Hillard,*

692 F.3d 523, 530 (6th Cir. 2013)............................................... 26

*Tuttle v. Metro. Gov't of Nashville,*
474 F.3d 307 (6th Cir.2007) ......................................................20

*United States v. Francis,*
170 F.3d 546 (6th Cir.1999) ...................................................... 18

*United States v. Hazime,*
762 F.2d 34 (6th Cir.1985)........................................................ 18

*Wallace v. Edward W. Sparrow Ass'n.,*
782 Fed. App'x 395 (6th Cir. 2019)........................................... 26

*Whitney v. Brown,*
882 F.2d 1068 (6th Cir.1989) .................................................... 18

*Willard v. Huntington Ford, Inc.,*
952 F.3d 795 (6th Cir. 2020) ........................................ 16, 21, 28

*Williams v. Mehra,*
186 F.3d 685 (6th Cir. 1999) .................................................... 18

<u>Statutes</u>

28 U.S.C. § 1291 ....................................................................... 6

28 U.S.C. § 1331 ....................................................................... 6

<u>Rules</u>

Fed. R. Civ. P. 56(c) .................................................................. 21

## **STATEMENT IN SUPPORT OF ORAL ARGUMENT**

Appellants respectfully request oral argument. The issues involve important rights under the Age Discrimination in Employment Act that implicate the interests and protection of older workers throughout this Judicial Circuit. Appellants believe oral argument would assist the Court in understanding how the district court misapplied the law with respect to their ADEA claims.

## <u>JURISDICTIONAL STATEMENT</u>

The Eastern District of Tennessee had jurisdiction of this matter pursuant to 28 U.S.C. § 1331 because the claims arose under the Age Discrimination in Employment Act, 29 U.S.C. SS 623(a)(1).

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because it arises from a final judgment of the United States District Court for the Eastern District of Tennessee, which was entered on May 7, 2024. (RE 56, Page ID # 878-894). Appellants timely appealed on May 30, 2024. (RE 59, Page ID # 917-918).

## __STATEMENT OF THE ISSUES__

1.    Did the district court err in finding as a matter of law that Appellants failed to show that questions of fact exist as to whether Defendant's proffered legitimate, non-discriminatory reason for terminating Appellants was pretext such that summary judgment should be precluded?

## <u>STATEMENT OF THE CASE</u>

The primary players are:

| | | |
|---|---|---|
| 1. | <u>Kevin Myers:</u> | IT Director for Defendant; |
| 2. | <u>David Sullivan:</u> | Systems Analyst for Defendant; |
| 3. | <u>Darlene Robertson:</u> | Network Administrator for Defendant; |
| 4. | <u>Charles Cummins:</u> | Help Desk Technician for Defendant; |
| 5. | <u>Christie Owenby:</u> | Human Resources Market Director for Defendant. |

**1.    David Sullivan**

At the time relevant to this lawsuit, Mr. Sullivan was sixty-eight (68) years old. (Complaint, RE 1, Page ID # 3, ¶ 17). Mr. Sullivan began his employment with Defendant in or around July 2006. (RE 1, Page ID # 3, ¶ 18). Mr. Sullivan was a System Analysist at the time of his termination. (RE 1, Page ID # 3, ¶ 21). Mr. Sullivan was primarily assigned to the North Knoxville Medical Center at the time of his termination; however, he traveled to multiple of Defendant's locations as needed. (RE 1, Page ID # 3, ¶ 19).

**2.    Darlene Robertson**

Ms. Robertson was sixty-nine (69) years old at the time relevant to this lawsuit. (RE 1, Page ID # 4, ¶ 26). Ms. Robertson began working for Defendant in April 1977. (RE 1, Page ID # 4, ¶ 27). Defendant assigned Ms. Robertson to work primarily at its North Knoxville Medical Center facility as of the date of her termination. (RE 1, Page ID # 4, ¶ 28). Ms. Roberts was a Network Administrator at the time of her termination. (RE 1, Page ID # 4, ¶ 29).

**3.    Charles Cummins**

Mr. Cummins was sixty-eight (68) years old at the time relevant to this lawsuit (RE 1, Page ID # 3, ¶ 22). Mr. Cummins began his employment with Defendant in 1999. (RE 1, Page ID # 4, ¶ 23). Mr. Cummins was a Help Desk Technician as of the date of his termination and performed his duties at several of Defendant's locations. (RE 1, Page ID # 4, ¶ 24).

**4.    Kein Myers and Defendant's Reduction in Force**

*a.  Kevin Myers' relationship with Appellants.*

On November 1, 2020, Kevin Myers, who had been serving as IT Director for a Community Health Systems, Inc. ("CHS") hospital in Texas, was transferred to East Tennessee to help Tennova's five hospitals in East

9

Tennessee (which were part of CHS) transition to a new IT platform called Cerner and to switch to a new IT environment called the "US domain." (Myers Depo. pp. 8-9, 14-17, 196, RE 32-11, Page ID # 584, 586, 631). At the time Myers was approached about transferring to Tennova he was always aware that one of the purposes of the move was for him to conduct a reduction in force ("RIF"). (Myers Depo., p. 16, RE 32-11, Page ID # 586).

At the time Myers came to Tennova, he indirectly supervised approximately forty (40) employees, meaning that day-to-day supervision of those forty (40) employees was overseen by a middle-manager, not Myers. (Myers Depo., pp. 23-24, RE 32-11, Page ID # 588). Myers had a desk at Defendant's St. Mary's location, but was very rarely there, as he moved from facility to facility on "kind of a rotating basis." (Myers Depo., p. 24, RE 32-11, Page ID # 588). Of the forty (40) employees who indirectly reported to Myers, "[h]ardly any of them" were physically located in the facilities Myers moved between. (Myers Depo., pp. 24-25, RE 32-11, Page ID # 588). Myers played no role in conducting performance evaluations for employees under his supervision until the end of 2021, after the RIF had been completed. (Myers Depo., pp. 25-26, RE 32-11, Page ID # 588-589).

Included among these indirectly supervised employees were Appellants. Of the Appellants, Myers acknowledges that he did not have much

interaction with any of them. As to Mr. Sullivan, Myers testified that he only worked with him a "handful of times," and later clarified that he worked with Mr. Sullivan less than ten times. (Myers Depo., pp. 57-58, RE 32-11, Page ID # 596). Myers testified that he did not know a lot about Mr. Sullivan on a personal level. (Myers Depo., pp. 58-59, RE 32-11, Page ID # 597).

Similarly, as to Mr. Cummins, Myers only worked with him approximately five times, and only remembers one specific interaction with Mr. Cummins. (Myers Depo., pp. 60-61, RE 32-11, Page ID # 597). While Myers stated that he worked with Ms. Robertson more often than the other Appellants, he testified that he interacted with her in-person less than five times. (Myers Depo., pp. 61-62, RE 32-11, Page ID # 597-598).

### b. *The logistics of the RIF and its subjective metrics.*

In completing the RIF, Myers was instructed to use a template with specific metrics by which to measure the included employees. (Myers Depo., p. 103, RE 32-11, Page ID # 608). The only purpose of the spreadsheet template was for the purpose of conducting a RIF. (Myers Depo., p. 108, RE 32-11, Page ID # 609). Myers was not provided with any instruction on how to complete the template by Human Resources Market Director Kristy Owenby. (Owenby Depo., p. 25, RE 32-12, Page ID # 661). This despite that

Myers was the person responsible for providing subjective input in the scores (Myers Depo., p. 105, RE 32-11, Page ID # 608) and was also the person who got final say on the list and its scores. (Myers Depo. p. 126, RE 32-11, Page ID # 614).

The template given to Myers included the following columns as categories for completion:

1.    Employee Name;
2.    Hire Date;
3.    Job Title;
4.    Department;
5.    Shift;
6.    FTE;
7.    Relevant Job Experience and Training for Targeted Position;
8.    Overall job performance (per latest performance evaluation);
9.    Versatility/ability to perform other duties when needed;
10.   Problem-solving Ability;
11.   Interactive Skills/Cooperation with coworkers, supervisors, and/or subordinates;
12.   Customer Service;
13.   Attendance/reliability;
14.   Disciplinary actions within the past 12 months;
15.   Seniority;
16.   Total Points;
17.   Selected for RIF? (Yes/No);
18.   Employee base hourly rate;
19.   Proposed severance; and
20.   Proposed Severance amount ($).

(Myers Depo., pp. 97-99, RE 32-11, Page ID # 606-607). Myers acknowledged that several of these categories were subjective in nature. (Myers Depo., p. 105, RE 32-11, Page ID # 608).

c.  *The RIF spreadsheet's completed scores*

Myers was the person responsible for completing much of the scores on the spreadsheet, including the subjective measures such as Relevant Job Experience and Training for Targeted Position, Versatility/ability to perform other duties when needed; Problem-solving Ability; Interactive Skills/Cooperation with coworkers, supervisors, and/or subordinates; Customer Service; and Attendance/reliability. (Myers Depo., p. 105, RE 32-11, Page ID # 608).

In completing the scores, Myers testified that the scores shown in the spreadsheet are based on Myers's personal experience with each of the people listed. (Myers Depo., p. 108, RE 32-11, Page ID # 609). Myers did not consult any prior managers or anyone else in compiling the numbers. *Id*. Myers did not consult any past performance evaluations or other performance indicators in compiling the scores. *Id*. As stated previously, Myers had extremely limited experience and personal interaction with Appellants and many of the other employees listed. (Myers Depo., pp. 24-25, 57-62, RE 32-11, Page ID # 588, 596-598).

Despite his limited personal interactions with Appellants and his lack of knowledge regarding performance evaluations or indicators, Myers

13

apparently used his "personal experience" with Appellants to score them as follows:[1]

SUBJECTIVE METRICS:

| Employee Name | Relevant job experience and training | Overall job performance | Versatility/ ability to perform other duties | Problem-solving ability | Interactive skills/ cooperation with coworkers | Customer service | Attendance/ reliability |
|---|---|---|---|---|---|---|---|
| Roberson, E.D. | 20 | 35 | 20 | 20 | 20 | 20 | 35 |
| Cummins, Charles P. | 35 | 35 | 35 | 35 | 35 | 35 | 35 |
| Sullivan, David C. | 20 | 35 | 20 | 20 | 35 | 35 | 35 |

NON-SUBJECTIVE METRICS & TOTAL:

| Employee Name | Hire Date | Disciplinary actions within the past 12 months | Seniority | Total Points | Selected for RIF? |
|---|---|---|---|---|---|
| Roberson, E.D. | 04/25/1977 | 0 | 15 | 125 | Y |
| Cummins, Charles P. | 03/05/2012 | 0 | 10 | 255 | Y |
| Sullivan, David C. | 06/11/2007 | 0 | 15 | 215 | Y |

(Myers Depo., Exh. 4, RE 29-2, Page ID # 236). As the tables above indicate, each Appellant was selected for the RIF and subsequently

---

[1] Note: In an effort to save room and maintain the readability of the respective tables, the subjective metrics completed by Myers have been isolated in a separate chart from the non-subjective metrics completed by Owenby. The full table can be found at Myers Depo., Exh. 8, RE 29-2, Page ID # 236.

terminated on October 1, 2021. (Def's Statement of Undisputed Material Facts [RE 31], ¶ 60). Of the terminated employees, all fourteen (14) were over forty (40) years of age. (RE 30, Page ID # 458; Def's SUMF, RE 31, Page ID # 491, ¶ 64).

### d. *Kevin Meyers tells Larry Rupard he has enough old people.*

At some point between when Myers was brought to Tennova in November 2020, and the execution of the RIF in October 2021, Myers had a conversation with Larry Rupard about a hiring decision in Defendant's Cleveland, Tennessee hospital. Regarding this conversation, when asked to explain what happened, Rupard testified:

> A:   Sure. I was doing some interviews for a desk side position at the Cleveland, Tennessee location. We were just starting to get involved with them and the deskside person there had left. And I was in the process of doing some interviews for that position. And I had a lady that I was interested in hiring. And she was probably -- if I recollect correctly, she was probably in her early to mid fifties. I went over these candidates with Kevin and expressed my desire to hire this lady. And he informed me not to hire her, because she was too old **and he had enough old people** at the Cleveland office.

> Q:   So you're saying that Mr. Myers said don't hire her because she was too old and he had enough old

15

people at the Cleveland office?

A:        Or just -- I'm sorry. **That he just had enough old people**. Not necessarily at the Cleveland office. I'm sorry, that was my mistake.

(Rupard Depo., pp. 32-33, RE 32-13, Page ID # 687) (emphasis added).

When subsequently asked to state Myers's comment as verbatim as he could, Rupard testified:

A:        **He said don't hire that person. They are too old. And I have enough old people.**

(Rupard Depo., p. 36, RE 32-13, Page ID # 688) (emphasis added).

Rupard recalls that the comment was made by Myers during a conversation the two were having at Defendant's Turkey Creek location in front of the conference room. (Rupard Depo., p. 34, RE 32-13, Page ID # 688). Myers made this comment prior to the execution of the RIF. (Def's SUMF, RE 31, Page ID #496 ¶ 85). Before he was terminated along with the other employees subject to the RIF, Rupard told Ms. Robertson about Myers's ageist comments. (Rupard Depo., p. 37, RE 32-13, Page ID # 688).

e.   _Defendant brings in new deskside employees prior to the_ _RIF._

Prior to the execution of the RIF, Defendant hired three new employees. These employees were Timothy Cochran, Glenn Grimsley, and Kevin Nguyen.

16

Timothy Cochran and Glenn Grimsley were brought in on July 12, 2021. (Myers Depo., Exh. 8, RE 29-2, Page ID # 236). Kevin Nguyen was hired on May 17, 2021. *Id.* All three of these employees were brought in as deskside employees. (Myers Depo., pp. 114, 200, RE 32-11, Page ID # 611, 632). This was the same position Mr. Sullivan had prior to his termination. (Myers Depo., pp. 118-119, RE 32-11, Page ID # 612). Two of these employees were significantly younger than Appellants. Grimsley was twenty-four (24) years old at the time of the RIF. (RE 32-9, Page ID # 544-545). Nguyen was only slightly older, being thirty-one (31) years old at the time of the RIF. *Id.* Myers acknowledged that Grimsley had no formal experience with IT and stated that "personality" played a key role in his decision to bring in Grimsley. (Myers Depo., pp. 119-122, RE 32-11, Page ID # 612-613). Yet, Grimsley was not selected for the RIF.

## SUMMARY OF THE ARGUMENT

The court erred in finding that Appellants failed to show that the reason given for their respective terminations was pretext for discrimination.[2] Rather than examine the instances and examples of pretext as a whole, the lower court improperly examined each instance separately to reach the conclusion that none of the evidence presented, by itself, shows pretext. The lower court's analysis was improper.

"For a plaintiff to prevail on his ultimate burden, *the totality of the circumstances* must in each case create a reasonable inference that the employer's stated reasons *were a pretext for unlawful [age] discrimination*." *Connell v. Bank of Boston*, 924 F.2d 1169, 1175 (1st Cir. 1991) (citing *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)) (first emphasis added, second in original). "At this stage of the *McDonnell Douglas* burden-shifting framework, we examine all evidence that the plaintiff has put forth—

---

[2] In its Motion for Summary Judgment, Tennova also argues that Mr. Cummins waived his right to bring this lawsuit because his revocation of Tennova's offered severance check was untimely. (RE 30, Page ID # 459, 472-473). Mr. Cummins disputes this assertion and made arguments in support of his position in his Response to Defendant's Motion for Summary Judgment. (RE 32, Page ID # 518-521). But because the district court did not make any findings of law or fact related to this issue (*see* RE 56), Appellants do not appeal any ruling in regard to the issue of whether Mr. Cummins successfully revoked his acceptance of a severance agreement. As such, Appellants proceed under the assumption that Mr. Cummins did successfully revoke his acceptance of Tennova's severance agreement.

evidence from the prima facie stage, 'evidence discrediting the defendant's proffered reason,' and 'any additional evidence the plaintiff chooses to put forth.'" *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 810 (6th Cir. 2020) (quoting *Blair,* 505 F.3d at 532 (6th Cir. 2007).

When viewed under that framework, a reasonable jury could conclude that Defendant's proffered legitimate reasons for terminating Appellants was pretext for discrimination. First, the record shows that Myers specifically sought to exclude older workers from the hiring process. (Rupard Depo., pp. 32-33, RE 32-13, Page ID # 687). It does not take a large logical leap to conclude that Myers would also seek to single out older workers when it came time to terminate employees.

Second, the record shows that Myers utilized subjective scoring to determine who would be terminated. And despite not having sufficient personal experience with or knowledge of Appellants and their work history, Myers relied solely on his own knowledge of Appellants when completing these subjective scores. Third, every employee selected to be terminated as part of the RIF was over forty years of age. A jury could easily conclude that Myers used the RIF and its subjective scoring as a vehicle to eliminate many of Defendant's older workers, including Appellants.

But because the lower court analyzed each of these factors in a vacuum,

it concluded that the evidence was insufficient for a jury to find pretext. This was inappropriate.

## STANDARD OF REVIEW

The case is on appeal from the lower court's grant of summary judgment to Tennova. This Court reviews a grant or denial of summary judgment *de novo*, using the same Rule 56(c) standard as the district court. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, this Court must view the factual evidence and draw all reasonable inferences in favor of the non-moving party. *National Enterprises v. Smith*, 114 F.3d 561, 563 (6th Cir.1997).

Further, this Court reviews mixed questions of law and fact *de novo*. *Pullman Standard v. Swint*, 456 U.S. 273, 287–88, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); *United States v. Francis*, 170 F.3d 546, 549 (6th Cir.1999); *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir.1985). Lower court findings of ultimate facts based upon the application of legal principles to subsidiary facts are subject to *de novo* review. *Whitney v. Brown*, 882 F.2d 1068, 1071 (6th Cir.1989); *Taylor and Gaskin, Inc. v. Chris–Craft Indus.*, 732 F.2d 1273, 1277 (6th Cir.1984).

## ARGUMENT

**1.    Appellants easily establish the elements of their prima facie case.**

### a. *The ADEA – generally.*

The ADEA prohibits an employer from "discriminating against an employee over the age of forty because of the employee's age." *House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 463 (6th Cir. 2015). As the Supreme Court has pointed out, the ADEA "was prompted by [a] concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes" that productivity and competence decline with age. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993).

"A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence." *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 283 (6th Cir. 2012).[3] To establish a prima facie case of age discrimination under the indirect evidence framework, the ADEA plaintiff "must show that: (1) she was over 40 years old; (2) she suffered an adverse employment action;

---

[3] Appellants argued to the district court that the direct evidence framework applies to Myers' statements to Rupard. However, for the sake of narrowing the scope of arguments on appeal, Appellants do not dispute the lower court's finding on the issue of direct evidence. Instead, Appellants proceed only under the familiar *McDonnell Douglas* framework for circumstantial evidence.

(3) she was qualified for the position she held; and (4) she was either replaced by a person outside the protected class or treated differently than similarly-situated individuals." *See Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir.2007).

If the termination arises as part of a work force reduction, the Sixth Circuit has modified the fourth element above to require the plaintiff to provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp*, 896 F.2d 1457, 1465 (6th Cir.1990).

If an employee makes out a prima facie case, "the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action." *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir.2010). If the employer does so, the burden of production shifts back to the employee to show that the employer's stated reason was mere pretext. *Id.*

The plaintiff's burden at the prima facie stage is "not onerous." P*rovenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir.2011) (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir.2000)). Its purpose is "to raise a rebuttable presumption of discrimination by

'eliminat[ing] the most common nondiscriminatory reasons for the [employer's treatment of the plaintiff][.].'" *Williard v. Huntington Ford, Inc.*, 952 F.3d 795, 807 (6th Cir. 2020) (quoting *Cline*, 206 F,3d at 660). A Plaintiff's evidence at this stage will be sufficient if it "raise[s] some suspicion as to [the employer]'s motives . . .." *Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). More specifically, in reduction-in-force cases, "the purpose of the additional evidence requirement is to ensure . . . that the plaintiff has presented evidence to show that there is a *chance* the reduction in force is not the reason for the termination." *Johnson v. Franklin Farmers Co-op.*, 378 F. App'x 505, 509-510 (6th Cir. 2010) (emphasis added) (quoting *Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir. 2006)). "For example, a plaintiff could establish a prima facie case by showing . . . that the employer made statements indicative of a discriminatory motive . . .." *Barnes*, 896 F.2d at 166 (citations omitted).

### b. *Appellants undoubtedly meet their prima facie burden.*

The only element of the prima facie case challenged by Defendant at the summary judgment stage was the fourth—that Appellant show additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.

(RE. 30, Page ID # 465) (citing *Barnes,* 896 F.2d at 1465).

The lower court concluded that Appellants satisfied their prima facie burden, and on this, the lower court was correct.

First, Defendant's use of subjective criteria in its RIF calls into question the motivations of the RIF. Subjective criteria used in a RIF make it difficult to distinguish between lawful and unlawful employment actions, and they deserve "careful[ ] scrutin[y]." *Beck v. Buckeye Pipeline Services Co.*, 501 Fed. Appx. 447, 450 (6th Cir. 2012) (quoting *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.,* 690 F.2d 88, 93 (6th Cir.1982)). While flexibility in determining individual components of a matrix score does not necessarily indicate discrimination *Browning v. Dep't of the Army*, 436 F.3d 692, 697 (6th Cir.2006) (internal quotations omitted), "they do provide a ready mechanism for discrimination, permitting [] prejudice to affect and often control promotion and hiring decisions." *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, 690 F.2d 88, 93 (6th Cir. 1982) (emphasis added) (citing *Harris v. Group Health Assn.*, 662 F.2d 869, 873 (D.C.Cir.1981); *Parson v. Kaiser Aluminum & Chemical Corp.*, 575 F.2d 1374, 1385 (5th Cir. 1978), *cert. denied sub nom. Local 13000, United Steelworkers of America v. Parson*, 411 U.S. 968, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979); *Rowe v. General Motors Corp.*, 457 F.2d 348, 359 (5th Cir. 1972)). The question "is

whether the subjective criteria were used to disguise discriminatory action." *Grano v. Dep't of Dev. of Columbus*, 699 F.2d 836, 837 (6th Cir.1983).

Here, Defendant's RIF utilized subjective criteria, including: Relevant Job Experience and Training for Targeted Position; Overall job performance (per latest performance evaluation); Versatility/ability to perform other duties when needed; Problem-solving Ability; Interactive Skills/Cooperation with coworkers, supervisors, and/or subordinates; Customer Service; and Attendance/reliability. (Myers Depo., pp. 97-99, RE 32-11, Page ID # 606; Myers Depo., Exh. 2, RE 29-2, Page ID # 227). Myers acknowledged that several of these categories were subjective in nature. (Myers Depo., p. 105, RE 32-11, Page ID # 608). Myers was the only person responsible for completing the scores for the subjective metrics. *Id.*

Myers had limited experience and personal interaction with Appellants and many of the other employees listed. (Myers Depo., pp. 57-62, 24-25, RE 32-11, Page ID # 597-98, 588). Yet, he states that he relied upon his personal experience with each of the people listed to score the subjective metrics. (Myers Depo., p. 108, RE 32-11, Page ID # 609). Myers did not consult any prior managers or anyone else in compiling the numbers. *Id.* Myers did not consult any past performance evaluations or other performance indicators in compiling the scores. *Id.* This begs the question: how could Myers provide

scores for metrics such as problem-solving ability, interactive skills and cooperation with coworkers, customer service, and reliability, when he has such limited personal knowledge or experience with Appellants? These subjective scores are ripe for discrimination, especially when conducted by a person who barely knows the employees being evaluated.

Additionally, the record reflects Myers's animus towards older workers. Rupard testified that Myers instructed him not to hire a candidate because she was too old and he "had enough old people." (Rupard Depo., pp. 32-33, 36, RE 32-13, Page ID # 687-688). At the time this comment was made, Myers knew that a RIF was to be conducted. (Myers Depo., p. 16, RE 32-11, Page ID # 586). This means that Myers's animus towards older workers existed at the time of the RIF. *See Diebel*, 492 F. App'x at 530–31 (noting a boss's comments, "even if not direct evidence of discrimination, are circumstantial evidence of age discrimination"). The lower court correctly pointed out that to establish a prima facie case, it is enough that Appellants raised "suspicion" that age was the cause of their termination. (RE 56, Page ID # 886). The lower court correctly concluded that Myers' "enough old people" comment is at least "indicative" of age discrimination, and therefore, is sufficient to establish Appellants' prima facie case. *Id.*

In *Pelcha v. MW Bancorp, Inc.*, 455 F.Supp.3d 481, 503 (S.D. Ohio,

27

2020), the court found that the decisionmakers ageist comments were sufficient to create an inference of discrimination where he stated that another employee was "too old," and described her as "having a limited shelf life," and having reached or passed her "expiration date," and instructed a manger to reduce an older employee's hours. Myers's statements here that he "had enough old people," and not to hire a candidate because she was "too old" are no different and create an inference of discrimination.

Myers's animus, along with his unilateral completion of undisputably subjective scoring of Appellants surely creates an inference that Myers's choosing of Appellants for the RIF was a disguise for discrimination. This is especially true when coupled with the fact that *every* person who was chosen for the RIF was over forty (40) years of age. *See Pelcha v. MW Bancorp, Inc.*, 455 F.Supp.3d 481, 503 (S.D. Ohio, 2020) (finding that prima  facie burden was met where the plaintiff put forth "evidence of potentially ageist comments" by "the ultimate decisionmaker, from which one could infer discriminatory intent."). The evidence put forth by Appellants satisfied their prima facie burden.

2.  **The district court erred in finding that Appellants failed to show that the reason given for their respective terminations was pretext for discrimination. Specifically, the lower court improperly viewed the instances of pretext individually, rather than in their combined totality, to conclude that no individual instance presented sufficient evidence of pretext.**

Once a plaintiff establishes a prima facie case, a defendant can only refute the presumption of discrimination by proffering a legitimate, nondiscriminatory reason for taking the adverse employment action. *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008). If it does, the plaintiff must then show that the defendant's proffered reason was pretextual. *Id.* To demonstrate pretext, the plaintiff may show: (1) the proffered reason had no basis in fact; (2) the proffered reason did not actually motivate the adverse employment action; or (3) the proffered reasons were insufficient to motivate the adverse employment action. *Wallace v. Edward W. Sparrow Ass'n.*, 782 Fed. App'x 395, 404 (6th Cir. 2019) (citing *Comer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 511 (6th Cir. 2004)). "These means are not rigid and mutually exclusive, but rather illustrate the type of evidence capable of raising a material fact of pretext."  *Shockley v. Morristown-Hamblen Hosp. Assoc.*, No. 2:16-cv-257, 2018 WL 11372776, at *8 (E.D. Tenn. Oct. 16, 2018) (citing *Tingle v. Arbors at Hillard*, 692 F.3d 523, 530 (6th Cir. 2013)). In order "to survive summary judgment, a plaintiff need only produce enough evidence to ... rebut, but not disprove, the defendant's

proffered rationale." *Blair v. Henry Filters, Inc.* 505 F.3d 517, 532 (6th Cir. 2007) (*overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)).

"Courts should be cautious in granting, and affirming, summary judgment on discrimination claims when the plaintiff has made a prima facie case and a showing of pretext because 'an employer's true motivations are particularly difficult to ascertain, thereby frequently making such factual determinations unsuitable for disposition at the summary judgment stage.'" *Willard*, 952 F.3d at 810 (quoting *Singfield v. Akron Metro. Hous. Auth.,* 389 F.3d 555, 564 (6th Cir. 2004) (citations omitted).

Appellants raised several issues that, *when examined in their totality*, a reasonable jury could conclude show Defendant's proffered reason for termination was pretext. Rather than examine the instances and examples of pretext as a whole, the lower court improperly examined each instance separately to reach the conclusion that none of the evidence presented shows pretext when viewed individually. The lower court's analysis was improper.

"For a plaintiff to prevail on his ultimate burden, *the totality of the circumstances* must in each case create a reasonable inference that the employer's stated reasons *were a pretext for unlawful [age] discrimination*." *Connell v. Bank of Boston*, 924 F.2d 1169, 1175 (1st Cir. 1991) (citing *Texas*

*Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)) (first emphasis added, second in original). "At this stage of the *McDonnell Douglas* burden-shifting framework, we examine all evidence that the plaintiff has put forth—evidence from the prima facie stage, 'evidence discrediting the defendant's proffered reason,' and 'any additional evidence the plaintiff chooses to put forth.'" *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 810 (6th Cir. 2020) (quoting *Blair,* 505 F.3d at 532 (6th Cir. 2007); *see also, Goldman v. First Nat. Bank of Boston*, 985 F.2d 1113, 1119 (1st Cir. 1993) ("Evidence of age animus "need not be of the 'smoking gun' variety," <u>but the totality of the circumstances must permit a reasonable inference that the employer's justification for the challenged action was a pretext for age discrimination</u>.") (citations omitted) (underline added); *Herring v. Thompson*, 2003 WL 23590541, at *6 (D. Md. May 12, 2003) (citing *Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d 639, 648 n.4 (4th Cir. 2002) ("[A Plaintiff] can also prove pretext by demonstrating that the totality of circumstances establishes that the defendant's proffered reason, although factually supported, was not the actual reason relied on, but was rather a false description of its reasoning manufactured after the fact.") (cleaned up).

Appellants aver that the proffered reasons did not actually motivate Defendant's decision to terminate Appellants. As an initial matter, other than

the RIF and associated scores, Defendant has not *actually* proffered any reasons Appellants were chosen. That said, Defendant does spend considerable time discussing each Appellant's employment.

The lower court starts with an analysis of evidence of pretext applicable to all Appellants. (RE 56, Page ID # 888).

### a. *Myers' Ageist comments.*

The lower court begins its analysis by discussing Myers' ageist comments – i.e., his comments to Rupard not to hire an older worker and that he "had enough old people." (RE 56, Page ID # 888). But the court's analysis immediately misses the mark by analyzing the comment to determine whether it is direct evidence, rather than a pretext analysis.

The lower court cites *Geiger v. Tower Automotive* for the proposition that "[s]tatements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden . . . of demonstrating animus." (RE 56, Page ID # 888) (citing *Geiger v. Tower Automotive*, 579 F.3d 614, 621 (6th Cir. 2009) (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998)). While this is an accurate recitation of the case law, the portion of the case which was quoted was discussing whether the evidence in question was sufficient to be

considered direct evidence. *Geiger*, 579 F.3d at 621.

The lower court then discards Myers' ageist comments using this flawed analysis by concluding that the statements were not a part of the "decisional process" that led to the Appellants' termination. (RE 56, Page ID # 888). The court then—confusing the pretext analysis with the direct evidence analysis—concludes that Myers' comment was not sufficient to satisfy Appellants' summary judgment burden.

Myers' comments were evidence from which, when combined with other circumstantial evidence, a reasonable jury could conclude that Appellants were terminated because of their age. This is because "[c]ircumstantial evidence establishing the existence of a discriminatory atmosphere at the defendant's workplace in turn may serve as circumstantial evidence of individualized discrimination directed at the plaintiff." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 356 (6th Cir. 1998); *see also Conway v. Electro Switch Corp.*, 825 F.2d 593, 597 (1st Cir.1987) ("While evidence of a discriminatory atmosphere may not be conclusive proof of discrimination against an individual plaintiff, such evidence does tend to add 'color' to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff."); *Bevan v. Honeywell, Inc.*, 118 F.3d 603, 610 (8th Cir.1997) ("[S]uch comments are

surely the kind of fact which could cause a reasonable trier of a fact to raise an eyebrow, thus providing additional threads of evidence that are relevant to the jury." (quotations omitted)).

The lower court also incorrectly concluded that Myers' comments were not close enough in time for a reasonable jury to conclude that the comments were in any way related to Appellants' termination. Setting aside the fanciful notion that Myers' animus towards older workers apparently disappeared sometime in the (at most) eleven months between the comment and the termination, the case law is clear on this issue. In *Ercegovich*, the Sixth Circuit found that discriminatory statements by a managerial agent of the defendant which occurred fourteen months prior to the elimination of the plaintiff's position was not too attenuated to support a finding that age bias motivated the defendant's allegedly differential treatment of the plaintiff. *Ercegovich*, 154 F.3d at 357. That court concluded that such statements constituted relevant circumstantial evidence for the jury's consideration and found that questions of fact regarding whether the defendant's proffered legitimate, nondiscriminatory reason was pretext made summary judgment improper. *Id.*

But the court should not have isolated Myers' comments in this way to begin with. This was not the only evidence Appellants presented to show

34

pretext. As such, the lower court should have analyzed Myers' comments in conjunction with the other evidence of pretext presented to determine whether, when viewed in its totality, the evidence is suggestive of pretext. *See Ercegovich*, 154 F.3d at 357 (noting that the court must examine various factors affecting the statement's probative value, including "whether the statement buttresses other evidence of pretext."); *See also*, *Goldman*, 985 F.2d at 1119 ("Evidence of age animus "need not be of the 'smoking gun' variety," but the totality of the circumstances must permit a reasonable inference that the employer's justification for the challenged action was a pretext for age discrimination.") (citations omitted) (underline added).

Myers' ageist comment, when viewed in the context of the other circumstantial evidence presented by Appellants, is sufficient for a reasonable jury to conclude that age was the cause of Appellants' termination.

### b. *Myers' use of subjective scoring despite his limited personal interaction with Appellants.*

Defendant's use of subjective criteria in its RIF calls into question the motivations of the RIF. Subjective criteria used in a RIF make it difficult to distinguish between lawful and unlawful employment actions, and they deserve "careful[ ] scrutin[y]." *Beck v. Buckeye Pipeline Services Co.*, 501 Fed.

Appx. 447, 450 (6th Cir. 2012) (quoting *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.,* 690 F.2d 88, 93 (6th Cir.1982)). While flexibility in determining individual components of a matrix score does not necessarily indicate discrimination *Browning v. Dep't of the Army*, 436 F.3d 692, 697 (6th Cir.2006) (internal quotations omitted), "they do provide a ready mechanism for discrimination, permitting [] prejudice to affect and often control promotion and hiring decisions." *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, 690 F.2d 88, 93 (6th Cir. 1982) (emphasis added) (citing *Harris v. Group Health Assn.*, 662 F.2d 869, 873 (D.C.Cir.1981); *Parson v. Kaiser Aluminum & Chemical Corp.*, 575 F.2d 1374, 1385 (5th Cir. 1978), *cert. denied sub nom. Local 13000, United Steelworkers of America v. Parson*, 411 U.S. 968, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979); *Rowe v. General Motors Corp.*, 457 F.2d 348, 359 (5th Cir. 1972)). The question "is whether the subjective criteria were used to disguise discriminatory action." *Grano v. Dep't of Dev. of Columbus*, 699 F.2d 836, 837 (6th Cir.1983).

Here, Defendant's RIF utilized subjective criteria, including: Relevant Job Experience and Training for Targeted Position; Overall job performance (per latest performance evaluation); Versatility/ability to perform other duties when needed; Problem-solving Ability; Interactive Skills/Cooperation with coworkers, supervisors, and/or subordinates; Customer Service; and

Attendance/reliability. (Myers Depo., pp. 97-99, RE 32-11, Page ID # 606; Myers Depo., Exh. 2, RE 29-2, Page ID # 227). Myers acknowledged that several of these categories were subjective in nature. (Myers Depo., p. 105, RE 32-11, Page ID # 608). Myers was the only person responsible for completing the scores for the subjective metrics. *Id.*

The record reflects that Myers had limited experience and personal interaction with Appellants and many of the other employees listed. (Myers Depo., pp. 57-62, 24-25, RE 32-11, Page ID # 596-97, 588). Yet, he states that he relied upon his personal experience with each of the people listed to score the subjective metrics. (Myers Depo., p. 108, RE 32-11, Page ID # 609). Myers did not consult any prior managers or anyone else in compiling the numbers. *Id.* Myers did not consult any past performance evaluations or other performance indicators in compiling the scores. *Id.* This begs the question: how could Myers provide scores for metrics such as problem-solving ability, interactive skills and cooperation with coworkers, customer service, and reliability, when he has such limited personal knowledge or experience with Appellants? These subjective scores are ripe for discrimination. This is especially so when conducted by a person who barely knows the employees being evaluated and who has shown his dislike towards older workers.

It would not take a far reach for a jury to conclude that Myers used

subjective scoring to single out older employees (who he barely knows) for termination because he has disdain them and has "enough old people."

### c. *Every employee selected as part of the RIF was over 40.*

Next, the lower court concluded that the fact that every employee chosen as part of the RIF was over forty (40) years of age could not convince a jury that Appellants' termination was discriminatory. (RE 56, Page ID # 889-890). Again, this may be true when considered in isolation, which is how the lower court considered it. (*See* RE 56, Page ID # 890) ("Plaintiffs do not explain how the numbers *alone* could lead a jury to conclude that Plaintiffs' terminations were the result of discrimination") (emphasis added).

But, when combined with the fact that Myers had displayed animus towards older workers through his comments, used subjective scoring, and had limited interaction with Appellants and others selected as part of the RIF, a reasonable jury could conclude that Appellants were singled out because of their age.[4]

---

[4] Additionally, the cases relied upon by the lower court to discard the statistical evidence speak of the lack of usefulness in using certain statistical evidence in establishing a prima facie case. *See e.g., Thompson v. Fresh Products, LLC*, 985 F.3d 509, 526-27 (6th Cir. 2021); *Peoples v. City of Detroit*, 891 F.3d 622, 635 (6th Cir. 2018). Here, Appellants established their prima facie case using, *inter alia*, Myers' ageist statement. The lower court

38

d. *Evidence of pretext and questions of fact regarding each Appellant, respectively.*

In addition to the pretext shown above as to the Appellants collectively, Appellants also displayed pretext to the lower court as it relates to each Appellant, individually. This is significant, as Defendant spent a considerable time in its brief in support of summary judgment discussing each Appellant's employment, despite not actually proffering any reason for choosing each Appellant in the RIF.

i.    *Evidence of pretext as to Appellant David Sullivan.*

As to Sullivan, Defendant points to one instance in which Sullivan allegedly failed to find a solution to a computer issue, and Myers was unable to recall who fixed the issue, or if it was resolved at all. (Myers Depo., pp. 185-186, RE 32-11, Page ID # 628-29). The only other allegations regarding Mr. Sullivan were based on Myers's alleged belief that Sullivan struggled with the transition to Cerner and with a new printing system. (RE 30, Page ID # 469). Defendant provides no actual proof of Sullivan's alleged struggle, nor does it

---

agreed that the statement alone was sufficient to establish a prima facie case—i.e., an inference of discrimination. Unlike in the cases cited by the lower court, Appellants utilize the statistical evidence – the fact that all fourteen employees included in the RIF were over 40 – as a part of the circumstantial evidence from which a jury could conclude that Defendant's given reasons were pretext for discrimination.

say these were the reasons Sullivan was chosen for the RIF.

Moreover, Defendant's addition of three new employees in the same position as Sullivan—two of whom were significantly younger—supports an inference that the proffered reason was pretext. This is especially true when one considers the scores given to Sullivan in comparison to the younger employees.

Despite that Myers admitted that Grimsley (age 24) had no experience with IT, Myers gave Grimsley a score of 50 in the "Relevant job experience and training for targeted position" category. (RE 29-1, Page ID # 151). Compare this with Sullivan, who had been employed by Defendant in the target position since 2006. Yet, Myers gave Sullivan a score of 20 in the "Relevant job experience and training for targeted position" category. *Id.* Myers provides no explanation for how a 24-year-old with no IT experience scored significantly higher than someone who had been in the position for fifteen years. This is evidence of pretext.

Moreover, Myers did not know Mr. Sullivan well enough to score him fairly on subjective scores such as problem-solving ability and interactive skills. At the time Myers came to Tennova, he indirectly supervised approximately forty (40) employees, meaning that day-to-day supervision of those forty (40) employees was overseen by a middle-manager, *not Myers.*

(Myers Depo., pp. 23-24, RE 32-11, Page ID # 588). Myers had a desk at
Defendant's St. Mary's location, but was very rarely there, as he moved from
facility to facility on "kind of a rotating basis." (Myers Depo., p. 24, RE 32-11,
Page ID # 588). Of the forty (40) employees who indirectly reported to Myers,
"[h]ardly any of them" were physically located in the facilities Myers moved
between. (Myers Depo., pp. 24-25, RE 32-11, Page ID # 588). Myers played
no role in conducting performance evaluations for employees under his
supervision until the end of 2021, after the RIF had been completed. (Myers
Depo., pp. 25-26, RE 32-11, Page ID # 588-589).

Included among these indirectly supervised employees were
Appellants. Of the Appellants, Myers acknowledges that he did not have much
interaction with any of them. As to Mr. Sullivan, Myers testified that he only
worked with him a "handful of times," and later clarified that he worked with
Mr. Sullivan less than ten times. (Myers Depo., pp. 57-58, RE 32-11, Page ID
# 596).[5] Myers testified that he did not know a lot about Mr. Sullivan on a

---

[5] The lower court provided Defendant with an improper favorable
inference when it acknowledged Myers' limited interactions with Appellants
but subsequently asserted that "Plaintiffs did not explain how that amount of
interaction was insufficient to evaluate them for a RIF." (RE 56, Page ID #
889). If the court had properly provided all reasonable inferences in favor of
Appellants, it would have concluded that a reasonable jury could find that the
five to ten times Myers interacted with Sullivan was insufficient to fairly score
Sullivan on subjective metrics like versatility, problem-solving ability,
customer service, and interactive skills. This is especially true given that

personal level. (Myers Depo., pp. 58-59, RE 32-11, Page ID # 597).

When contrasting this with Grimsley, who Myers testified was largely a "personality" hire (Myers Depo., pp. 119-122, RE 32-11, Page ID # 612-13), a jury could infer that Myers preferred younger employees (and their personality) over older employees and used subjective metrics to single out Mr. Sullivan in favor of the younger Grimsley.

   ii.    *Evidence of pretext as to Appellant Charles Cummins.*

As to Mr. Cummins specifically, Defendant tries to score points by arguing that because it did not terminate Thomas Dyer, who was sixty-four (64), no reasonable juror could conclude that Cummins was terminated because of his age when it retained Dyer. (RE 30, Page ID # 467). This argument falls short. Defendant acknowledges that among those in Mr. Cummins's group, Defendant fired Tara Henegar (46) and Angela Rittenhouse (54), as well as Cummins (68). Myers testified that the RIF was about the number of "bodies" to be removed per group. (Myers Depo., p. 69,

---

Myers acknowledged not speaking with any direct supervisors about Appellants' when conducting the RIF, instead relying solely on these limited interactions. (Myers Depo., p. 108, RE 32-11, Page ID # 609).

RE 32-11, Page ID # 599). As such, if Myers only needed to terminate three bodies from Mr. Cummins's group, Defendant does not get credit for terminating three workers over forty and keeping one. Defendant also points to job duties of Mr. Cummins that had been eliminated but points to nothing to suggest why this is relevant or whether Myers relied on this at all when scoring Cummins for the RIF.

Additionally, just as with Sullivan, Myers lacked sufficient personal knowledge of Mr. Cummins' employment to fairly score him on various subjective categories. Myers only worked with him approximately five times, and only remembers one specific interaction with Mr. Cummins. (Myers Depo., pp. 60-61, RE 32-11, Page ID # 597). Yet, he gave Mr. Cummins a score of 35 on the categories of interactive skills, problem-solving skills, and customer service. (RE 29-1, Page ID # 151). This begs the question: How could Myers rank Cummins on his interactive skills (as just one example) when he only remembers one specific interaction? When combined with Myers' displayed animus towards older workers, a reasonable jury could certainly conclude that Myers singled out Mr. Cummins for the RIF.

      iii.       *Evidence of pretext as to Appellant Darlene Robertson.*

As to Ms. Robertson, Defendant points to what it deemed a

performance issue regarding Ms. Robertson's alleged failure to back up seven of Tennova's servers. (RE 30, Page ID # 455). This allegation is very much disputed. As Robertson explained in her deposition, the servers she is alleged of failing to back up were never meant to be backed up because they were either offline, no longer in service, powered off, or had been taken down completely. (Robertson Depo., pp. 43-46, RE 32-14, Page ID # 701-702). As to any alleged communication issues, Defendant has not alleged that this was the reason Ms. Robertson was terminated.

Additionally, Defendant once again wants credit for not firing every older employee. (RE 30, Page ID # 468) (discussing Defendant's decision to not terminate Matha Johnson (67) and Mike Tipton (65)). Again, the RIF, in Myers's words, was about "bodies." (Myers Depo., p. 69, RE 32-11, Page ID # 599). Every person in Robertson's group who was terminated was over forty. Defendant does not get points for keeping some of its older workers when every employee it did terminate was over forty.

## <u>CONCLUSION</u>

Defendant cannot meet its burden of showing that no reasonable juror could conclude that Appellants were terminated because of their age. The evidence shows that Kevin Myers had enmity in his heart towards older workers at the time he was planning or conducting a RIF. Kevin Myers was also the sole decision maker responsible for completing scoring of subjective metrics of employees with whom he had little interaction. Uncoincidentally, every single employee who was selected for the RIF was over forty years of age, which is in line with Myers's feelings toward having too many old people. Because Defendant cannot meet its burden, summary judgment is improper. As such, Appellants respectfully request that this honorable Court REVERSE the lower court's decision granting summary judgment and REMAND such that issues of disputed fact may be assessed by the trier of fact.

RESPECTFULLY SUBMITTED,

*s/ Clint J. Coleman*
JESSE D. NELSON (BPR # 025602)
CLINT J. COLEMAN (BPR # 038413)
NELSON LAW GROUP, PLLC
10263 Kingston Pike
Knoxville, TN 37922
(865) 383-1053
jesse@NLGattorneys.com
clint@NLGattorneys.com

*Attorneys for Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32 (a)(7)(C) of the Federal Rules of Appellate Procedure, the undersigned certifies that the countable portion of Appellant's Brief contains approximately 8,094 words in a proportional font.

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing Brief of Appellant was served via the Appellate Court's ECF Filing System on all parties directed and authorized to receive such service, as shown on the ECF filing receipt. Dated: August 13, 2024.

<u> s/ Clint J. Coleman</u>
Attorney for Appellants

## <u>DESIGNATION OF DISTRICT COURT DOCUMENTS</u>

1. Complaint, *David Sullivan, Darlene Robertson, and Charles Cummins, Individually and on behalf of others similarly situated v. Metro Knoxville HMA, LLC d/b/a Tennova Healthcare*, No. 3:22-cv-00392, RE 1, Page ID # 1-6.

2. Defendant's Motion for Summary Judgment, RE 29, Page ID # 138-140.

    a. Declaration of Kevin Myers, RE 29-1, Page ID # 142-151.

    b. Excerpts from Deposition of Kevin Myers, RE 29-2, Page ID # 152-236.

3. Defendant's Memorandum of Law in Support of Motion for Summary Judgment, RE 30, Page ID # 449-474.

4. Defendant's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment, RE 31, Page ID # 475-498.

5. Plaintiffs' Response to Defendant's Motion for Summary Judgment, RE 32, Page ID # 499-522.

    a. Defendant's Answers to Plaintiff's First Set of Interrogatories, RE 32-9, Page ID # 536-551.

    b. Excerpts from Deposition of Kevin Myers, RE 32-11, Page ID # 582-654.

    c. Excerpts from Deposition of Kristie Owenby, RE 32-12, Page ID # 655-678.

    d. Excerpts from Deposition of Larry Rupard, RE 32-13, Page ID # 679-689.

    e. Excerpts from the Deposition of Darlene Robertson, RE 32-14, Page ID # 690-740.

6. Memorandum Opinion and Order granting Defendant's Motion for Summary Judgment, RE 56, Page ID # 878-894.

7. Notice of Appeal, RE 59, Page ID # 917-918.