No. 24-5531

### In the
### United States Court of Appeals
### for the Sixth Circuit

———◆———

DAVID SULLIVAN, DARLENE ROBERTSON, AND CHARLES CUMMINS, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED,

*Plaintiffs/Appellants,*

*v.*

METRO KNOXVILLE HMA, LLC D/B/A TENNOVA HEALTHCARE,

*Defendant/Appellee*

———◆———

*On Appeal from an Order of the United States District Court,*
*Eastern District of Tennessee (Knoxville)*
*The Honorable Clifton L. Corker, Presiding*
*3:22-CV-00392-DCLC-JEM*

———◆———

### BRIEF FOR APPELLEE
### METRO KNOXVILLE HMA, LLC D/B/A TENNOVA HEALTHCARE

John P. Rodgers
Joshua D. Kleppin
Bradley Arant Boult Cummings LLP
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
Telephone: (615) 252-4642

i

## RULE 26.1 DISCLOSURE STATEMENT

**1.    Is said party a substitute or affiliate of a publicly owned corporation?  If yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party.**

Yes. Metro Knoxville HMA, LLC d/b/a Tennova Healthcare's immediate parent company is Knoxville HMA Holdings, LLC.  Knoxville HMA Holdings, LLC's immediate parent company is Tennessee HMA Holdings, LP.  Tennessee HMA Holdings, LP's immediate parent company is Health Management General Partner I, LLC.  Health Management General Partner I, LLC's immediate parent company is Hospital Management Services of Florida, LP.  Hospital Management Services of Florida, LP's immediate parent company is HMA Services GP, LLC.  HMA Services GP, LLC's immediate parent company is Health Management Associates, LP.  Health Management Associates, LP's immediate parent company is Health Management General Partner, LLC.  Health Management General Partner, LLC's immediate parent company is Health Management Associates, LLC.  Health Management Associate, LLC's immediate parent company is HMA-TRI Holdings, LLC.  HMA-TRI Holdings, LLC's immediate parent company is CHS/Community Health Systems, Inc.  CHS/Community Health Systems, Inc.'s immediate parent company is Community Health Systems, Inc., which is a publicly traded company.

**2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identify of such corporation and the nature of the financial interest.**

No.

# TABLE OF CONTENTS

RULE 26.1 DISCLOSURE STATEMENT ................................................................ ii

TABLE OF AUTHORITIES.......................................................................... vii

ORAL ARGUMENT SHOULD NOT BE PERMITTED ............................................x

STATEMENT OF THE ISSUES ..........................................................................1

STATEMENT OF THE CASE...............................................................................2

STATEMENT OF FACTS ....................................................................................4

    A.   Kevin Myers Transfers to East Tennessee to Lead Tennova's IT Department....................................................................................................4

    B.   Tennova Changes from HMA Environment to US Domain, Implements Cerner......................................................................................................4

    C.   Appellants' Employment with Tennova's IT Department ...........................6

    D.   RIF Planned for Tennova's IT Department....................................................6

    E.   RIF Finalized for Tennova's IT Department...................................................9

        1.   Charles Cummins ...............................................................................9

        2.   Darlene Robertson...........................................................................10

        3.   David Sullivan.................................................................................13

    F.   Job Duties of Employees Subject to RIF Assumed by Remaining Staff...14

    G.   Cummins Signs Severance Agreement, Attempts to Revoke It After 7-Day Deadline .........................................................................................16

    H.   Myers Did Not Consider Employees' Ages When Conducting RIF .........17

    I.   Myers's Alleged Comment Regarding Age of Applicant Unconnected to RIF ....................................................................................................18

    J.   Myers Attempts to Find Jobs for Employees Subject to RIF ....................19

SUMMARY OF THE ARGUMENT ........................................................................20

STANDARD OF REVIEW ....................................................................................22

ARGUMENT .....................................................................................................23

    A.   Appellants Cannot Establish a *Prima Facie* Case of Age Discrimination. .................................................................................................................23

        1.   Appellants Underwent the Same Subjective Assessment as Everyone Else in the IT Department.................................................24

iv

2. Use of Subjective Criteria Did Not Disguise Discriminatory Animus Because Employees of Similar Ages as Appellants Underwent the Same Analysis and Were Not Laid Off ....................25

3. Appellants Had the Same Level of Interaction with Myers as Other IT Employees ....................................................................................27

4. Myers's Alleged Comment About an Unidentified Candidate for a Different Hospital Does Not Show Discriminatory Animus Because It Was Not Directed at Appellants nor Connected to RIF ...28

5. More Than "Suspicion" Required to Establish *Prima Facie* Case under RIF Framework .......................................................................31

B. Even if Appellants Could Establish a *Prima Facie* Case, this Court Should Affirm the District Court's Holding that Appellants Failed To Show That Tennova's Legitimate Non-Discriminatory Reason for Terminating Appellants Was Pretext for Age Discrimination. .................33

1. It Is Undisputed That a RIF Occurred and Undisputed that Appellants Were Selected for It Along with 11 Other IT Department Employees Based on Their Low Scores ............................................33

2. The District Court Correctly Held Appellants Did Not Establish a Genuine Issue of Material Fact Regarding Whether Tennova's Proffered Reason – the RIF – Actually Motivated the Discharge .....35

a. The District Court Considered the Totality of the Circumstances, and Appellants Do Not Identify any Evidence the District Court Overlooked.......................................................................................36

b. District Court Considered Myers's Alleged Statement as Circumstantial Evidence within Pretext Context and Correctly Held It Was an Isolated Comment Unrelated to the RIF .............37

c. District Court Correctly Held that Myers's Alleged Statement to Rupard Was Not Sufficient to Withstand Summary Judgment.....38

d. Use of Subjective Scoring Does Not Evidence Pretext...............43

e. Fact that All Employees Selected for the RIF Were 40 and Older Does Not Evidence Pretext ..........................................................46

f. Sullivan Cannot Create a Genuine Issue of Material Fact that His Termination Was Pretext for Age Discrimination .................47

g. Cummins Cannot Create a Genuine Issue of Material Fact that His Termination Was Pretext for Age Discrimination .................51

h.  Robertson Cannot Create a Genuine Issue of Material Fact that Her Termination Was Pretext for Age Discrimination ..................53

C.  Cummins Waived His ADEA Claim ...........................................................54

CONCLUSION ..................................................................................................55

CERTIFICATE OF COMPLIANCE ........................................................................57

CERTIFICATE OF SERVICE ..............................................................................58

ADDENDUM ...................................................................................................58

# TABLE OF AUTHORITIES

## Cases

*Adams v. Proto Plastics, Inc.*,
   151 F. App'x 468 (6th Cir. 2005) .......................................................32

*Allen v. Diebold, Inc.*,
   33 F.3d 674 (6th Cir. 1994) .......................................................27, 46

*Allen v. Highlands Hosp. Corp.*,
   545 F.3d 387 (6th Cir. 2008) ...............................................................23

*Anderson v. Otis Elevator Co.*,
   923 F. Supp. 2d 1032 (E.D. Mich. 2013) ...................................28, 45

*Barnes v. GenCorp*,
   896 F.2d 1457 (6th Cir. 1990) ....................................................*passim*

*Beck v. Buckeye Pipeline Servs., Co.*,
   501 F. App'x 447 (6th Cir. 2012) ..............................................25, 44

*Browning v. Dep't of Army*,
   436 F.3d 692 (6th Cir. 2006) .....................................................*passim*

*Cerros v. Steel*,
   288 F.3d 1040 (7th Cir. 2002) ...........................................................43

*Diebel v. L & H Resources, LLC*,
   492 F. App'x 523 (6th Cir. 2012) ......................................................29

*Ercegovich v. Goodyear Tire & Rubber Co.*,
   154 F.3d 344 (6th Cir. 1998) .....................................................*passim*

*Frazier v. Jenkins*,
   770 F.3d 485 (6th Cir. 2014) ..............................................................48

*Geiger v. Tower Auto.*,
   579 F.3d 614 (6th Cir. 2009) ..............................................................23

*Gragg v. Somerset Tech. Coll.*,
   373 F.3d 763 (6th Cir. 2004) ..............................................................32

*Grano v. Dep't of Dev. of Columbus*,
    699 F.2d 836 (6th Cir. 1983) ........................................................25, 45

*Hartsel v. Keys*,
    87 F.3d 795 (6th Cir. 1996) ...............................................................45

*Hausler v. Gen. Elec. Co.*,
    134 F. App'x 890 (6th Cir. 2005) .......................................................42

*Henley v. Cuyahoga Cnty. Bd. of Mental Retardation & Dev. Disabilities*,
    141 F. App'x 437 (6th Cir. 2005) .......................................................55

*King v. Steward Trumbull Mem'l Hosp., Inc.*,
    30 F.4th 551 (6th Cir. 2022) ..............................................................22

*Kirilenko-Ison v. Bd. of Educ.*,
    974 F.3d 652 (6th Cir. 2020) ..............................................................22

*LaGrant v. Gulf & Western Mfg. Co., Inc.*,
    748 F.2d 1087 (6th Cir. 1984) ...........................................................32

*Manzer v. Diamond Shamrock Chems. Co.*,
    29 F.3d 1078 (6th Cir. 1994), *overruled on other grounds by Geiger*, 579 F.3d ...........................................................35, 36

*Pelcha v. MW Bancorp Inc.*,
    455 F. Supp. 3d 481 (S.D. Ohio 2020) ...............................................30

*Peyton v. Kellermeyer Co.*,
    115 F. App'x 825 (6th Cir. 2004) .......................................................30

*Phelps v. Yale Sec., Inc.*,
    986 F.2d 1020 (6th Cir. 1993) ...................................................28, 39, 40

*Rowan v. Lockheed Martin Energy Sys., Inc.*,
    360 F.3d 544 (6th Cir. 2004) ..............................................................31

*Sahadi v. Reynolds Chem.*,
    636 F.2d 1116 (6th Cir. 1980) ...........................................................32

*Schoonmaker v. Spartan Graphics Leasing, LLC*,
    595 F.3d 261 (6th Cir. 2010) ..............................................................48

*Thompson v. Fresh Prods., LLC*,
   985 F.3d 509 (6th Cir. 2021) ................................................................51

*Trapp v. TSS Techs., Inc.*,
    485 F. App'x 757 (6th Cir. 2012) .......................................................40

*Wilson v. Firestone Tire & Rubber Co.*,
   932 F.2d 510 (6th Cir. 1991) ......................................................27, 46

## Statutes

29 U.S.C. § 626(f)(1)(F)(ii), (G)..............................................................54

## Other Authorities

Fed. R. App. P. 34 ........................................................................................x

Fed. R. Civ. P. 56(a)..................................................................................22

Local Rule 26.1 ............................................................................................ ii

Local Rule 28 ...............................................................................................x

## **ORAL ARGUMENT SHOULD NOT BE PERMITTED**

Pursuant to Rule 34 of the Federal Rules of Appellate Procedure and Local Rule 28 of the Sixth Circuit Court of Appeals, Defendant-Appellee Metro Knoxville HMA, LLC d/b/a Tennova Healthcare respectfully states that oral argument in not necessary. The issues in this appeal require straightforward application of settled Sixth Circuit law. The material facts – which are not disputed – and the legal arguments are adequately presented in the briefs and record, and oral argument would not significantly aid the decisional process.

## <u>STATEMENT OF THE ISSUES</u>

1)      Whether the District Court correctly ruled that Appellants established a *prima facie* case of age discrimination under the Age Discrimination in Employment Act ("ADEA") in a reduction in force ("RIF") case when Appellants lack additional direct, circumstantial, or statistical evidence tending to indicate that the Appellee Metro Knoxville HMA, LLC d/b/a Tennova Healthcare ("Tennova") singled out Appellants for discharge because of their age.

2)      If Appellants were able to establish a *prima facie* case of age discrimination under the ADEA in a RIF case, whether the District Court's grant of summary judgment to Tennova should be affirmed when Appellants cannot establish a genuine issue of material fact that Tennova's legitimate, non-discriminatory reason for terminating them – the RIF – was pretext for age discrimination.

3)      Whether Appellant Charles Cummins timely revoked a severance agreement he executed releasing his ADEA claim that he subsequently brought in this case when he submitted his revocation to Tennova more than seven (7) days after he signed the severance agreement.

## STATEMENT OF THE CASE

On November 7, 2022, Plaintiffs-Appellants David Sullivan ("Sullivan"), Darlene Robertson ("Robertson"), and Charles Cummins ("Cummins") (collectively, the "Appellants"), filed a Complaint in the United States District Court for the Eastern District of Tennessee against Tennova.  (Complaint, RE 1, PageID # 1–14.)  In the Complaint, Appellants alleged Tennova terminated them on the basis of their age in violation of the ADEA.  (*Id.*, PageID # 4.)  Appellants styled their Complaint as a collective action under the ADEA and purportedly brought the Complaint "individually and on behalf of others similarly situated."  (*Id.*, PageID # 1–14.)

On December 6, 2022, Tennova filed an Answer to the Complaint, denying Appellants' allegations.  (Answer, RE 8, PageID # 33–39.)  In its Answer, Tennova stated that a "collective action should not be certified in any way in this case because all members of the putative class (other than the three named Plaintiffs) have signed releases releasing any and all claims (including under the ADEA) against Defendant."  (*Id.*, PageID # 37, ¶ 5.)  Tennova subsequently amended its Answer on November 20, 2023 after discovery revealed that Cummins had also signed a severance agreement releasing his claims under the ADEA and that Cummins's purported revocation of such agreement was untimely.  (Am. Answer, RE 22, PageID # 109, ¶¶ 5–6.)  Appellants never filed a motion for Court-authorized notice to treat

this case as a collective action under the ADEA. Thus, the case proceeded as Appellants' individual actions under the ADEA.

On February 5, 2024, Tennova filed its Motion for Summary Judgment. (Def.'s Mot. for Summ. J., RE 29, PageID # 138–41.) On February 26, 2024, Appellants filed their Response to Defendant's Motion for Summary Judgment. (Pls.' Resp. to Def.'s Mot. for Summ. J., RE 32, PageID # 499–521.) On March 4, 2024, Tennova filed its Reply to Plaintiff's Response in Further Support of its Motion for Summary Judgment. (Def.'s Reply to Pls.' Resp. in Further Supp. of Def.'s Mot. for Summ. J., RE 34, PageID # 770–82.)

On May 7, 2024, the Honorable Clifton L. Corker entered a Memorandum Opinion and Order granting Tennova's Motion for Summary Judgment. (Mem. Op. & Order (hereinafter, "Mem. Op."), RE 56, PageID # 878–94.) Judgment was entered that same day. (Judgment, RE 57, PageID # 895.) On May 30, 2024, Appellants filed their Notice of Appeal. (Notice of Appeal, RE 59, PageID # 917.)

## STATEMENT OF FACTS

**A.    Kevin Myers Transfers to East Tennessee to Lead Tennova's IT Department.**

On November 1, 2020, Kevin Myers, who had been serving as IT Director for a Community Health Systems, Inc. ("CHS") hospital in Texas, was transferred to East Tennessee to help Tennova's five hospitals in East Tennessee (which were part of CHS) transition to a new IT platform called Cerner and to switch to a new IT environment called the "US domain."   (Pls.' Response to Def.'s Statement of Undisputed Mat. Facts ("SUMF"), RE 33, PageID # 741, ¶ 1.)  Myers was 48 at the time he was transferred to East Tennessee.  (*Id.*, ¶ 2.)  At the time that Myers transferred to East Tennessee, Tennova's IT Department serviced a group of five hospitals there: North Knoxville Medical Center, Turkey Creek Medical Center, Newport Medical Center, LaFollette Medical Center, and Jefferson Memorial Hospital.  (*Id.*, PageID # 742, ¶ 3.)

**B.    Tennova Changes from HMA Environment to US Domain, Implements Cerner.**

At the time that Myers came to East Tennessee, Tennova had a large IT Department of about 40 employees because most of what the IT Department was doing was servicing the five Tennova hospitals, as compared to utilizing the IT resources available at CHS' corporate office (as had been the case with Myers's time as IT Director in Texas).  (*Id.*, ¶ 4.)   CHS had previously acquired Health

Management Associates ("HMA") and the "Tennova brand," but Tennova still operated as very much an entity outside of the standard IT applications for CHS. (*Id.*, ¶ 5.)  Tennova's IT systems operated largely on the HMA environment, which was a set of IT resources, such as servers, networks, and IP schemes.  (*Id.*, PageID # 742–43, ¶ 6.)  When Myers transferred to East Tennessee, one of his tasks was to bring the Tennova hospitals from HMA's way of doing IT over to how CHS operates those systems.  (*Id.*, PageID # 743, ¶ 7.)

Part of that transition involved switching Tennova from HMA's environment to a cloud computing system.  Cerner is cloud-based technology accessed through the internet that contains the electronic health record containing the medical records and all health records that go along with running a hospital.  (*Id.*, ¶ 8.)  Tennova had to transition to the US domain to allow Cerner to be able to work.  (*Id.*, ¶ 9.)  Tennova went live with Cerner on December 5, 2020.  (*Id.*, ¶ 10.)

As part of the transition to Cerner, Tennova replaced many of its computers that were on the HMA environment to what are called "thin clients."  (*Id.*, PageID # 744, ¶ 11.)  "Thin Client" computers are "dumb" PCs that do not have processing power themselves but rather access cloud-based applications stored on servers.  (*Id.*, ¶ 12.)  The "Thin Client" system allowed for Tennova to rely more heavily on Cerner's IT resources, and reduced the need for localized support to trouble-shoot the individual needs of each computer on a case-by-case basis.  (*Id.*, ¶ 13.)

### C.   Appellants' Employment with Tennova's IT Department.

David Sullivan was a deskside employee, officially called a "Systems Analyst," working within Tennova's IT Department. (*Id.*, ¶ 14.) After the transition to Thin Clients, a primary responsibility for deskside employees was helping employees understand that there was no PC anymore but instead there was a Thin Client. There was no longer a need to interact with that hardware device – the Thin Client is either on or its off and just works. (*Id.*, PageID # 745, ¶ 16.)

Charles Cummins was a helpdesk employee (officially known as a Service Desk Analyst), and one of Cummins's job responsibilities was changing the back-up tapes in the Lenoir City Data Center (in addition to working weekends on the help desk). (*Id.*, ¶ 17.) Darlene Robertson was, by title, a network admin, but she was really a systems person, which was largely about applications and servers and the environments that the Thin Client points to. (*Id.*, PageID # 745–46, ¶ 18.) In Myers's assessment, the change to the U.S. domain changed Robertson's job because the US domain relied much more on vendors and CHS' corporate office, rather than local knowledge in the HMA environment. (*Id.*, PageID # 746, ¶ 19.)

### D.   RIF Planned for Tennova's IT Department.

From the time that Myers was approached about relocating to East Tennessee to transition Tennova's IT Department to the US domain and to implement Cerner, a reduction in force, or "RIF," was always intended. (*Id.*, ¶ 20.) The intent was to

6

gain efficiency by moving to the US domain; the US domain is largely managed by CHS' corporate office and not local IT employees, requiring a reduction in force. (*Id.*, ¶ 21.) Barry Fitts, Myers's boss and the Chief Information Officer for Region 2, told Myers that he needed to reduce the size of Tennova's IT Department by 20% from a headcount perspective. (*Id.*, PageID # 746–47, ¶ 22.)

Kristie Owenby is Tennova's Market Human Resources Director, and she has served in that role since 2018. (*Id.*, PageID # 747, ¶ 23.) In February 2021, Myers discussed the planned RIF with Owenby because he had never actually had to conduct a RIF and was looking for assistance. (*Id.*, ¶ 24.) On February 18, 2021, Owenby e-mailed Myers the IT workforce spreadsheet for Myers to complete and have approved before any RIF occurred. (*Id.*, ¶ 25.) On the template spreadsheet for conducting the RIF, Myers would evaluate every employee across the categories and score them, and that was how Tennova was going to conduct the RIF. (*Id.*, ¶ 26.)

The Tennova IT Department was consolidated into an entity referred to internally as "8515," whose expenses were expensed back out to the five Tennova hospitals. (*Id.*, PageID # 747–48, ¶ 27.) Myers was considering all employees under the entity "8515" that were IT employees for the RIF. (*Id.*, PageID # 748, ¶ 28.) The groups of employees considered for the RIF were help desk, deskside, systems support, and clinical informatics. (*Id.*, ¶ 29.)

Myers did not measure employees in one job category within the IT Department against employees in a different job category; for instance, the help desk employees were only compared to other help desk employees. (*Id.*, ¶ 30.) When conducting the RIF, Myers was given freedom to figure out how his department was going to look when he was done based on a reduction of a total number of employees, including determining the number of employees Tennova needed for each job position. (*Id.*, ¶ 31.)

Myers provided the scores of the members of the IT Department that required a subjective assessment of the employees. (SUMF, RE 33, PageID # 749, ¶ 32.) Tennova's IT Department employees were scored based on the following categories, the scores for which were totaled to help determine which employees were subject to the RIF: (1) relevant job experience and training for targeted position; (2) overall job performance (per latest performance evaluation); (3) versatility/ability to perform other job duties when needed; (4) problem-solving ability; (5) interactive skills/cooperation with co-workers, supervisors and/or subordinates; (6) customer service; (7) attendance/reliability; (8) disciplinary actions within the past 12 months (which would decrease the score); and (9) seniority (which added to the score). (*Id.*, ¶ 33.) Owenby completed the scores for the disciplinary action within the past 12 months and seniority, and Myers completed the scores for the remaining categories that required a subjective analysis. (*Id.*, ¶ 34.)

8

### E.    RIF Finalized for Tennova's IT Department.

On September 22, 2021, Myers e-mailed the final draft of the proposed reduction of Tennova's IT Department to Fitts.  (*Id.*, ¶ 35.)  The spreadsheet that Myers e-mailed to Fitts on September 22, 2021, was the final spreadsheet that was used for conducting the RIF.  (*Id.*, PageID # 750, ¶ 36.)

### 1. Charles Cummins

For the help desk analysts, Myers scored the employees as follows:

| Employee Name | Job Title | Overall Score | Selected for RIF |
|---|---|---|---|
| Beckman, Harold L. | Help Desk Analyst | 260 | No |
| Cummins, Charles P. | Help Desk Analyst | 255 | Yes |
| Dyer, Thomas A. | Help Desk Analyst | 360 | No |
| Henegar, Tara | Help Desk Analyst | 200 | Yes |
| Rittenhouse, Angela | Help Desk Analyst | 205 | Yes |

(*Id.*, ¶ 37.)

Cummins, Henegar, and Rittenhouse, as the three lowest scoring help desk analysts, were selected for the RIF.  (*Id.*, PageID # 751, ¶ 38.)  Cummins admitted that a portion of his job that he did everyday – driving from Knoxville to Lenoir City, Tennessee and back to change out the tapes at the Lenoir City Data Center – had been eliminated a few months before he was laid off.  (*Id.*, ¶ 39.)  After the elimination of his job duties to drive to change out the tapes, in Myers's assessment,

9

Cummins struggled to find an adequate amount of work and exhibited poor performance skills related to answering customer phone calls.  (*Id.*, ¶ 40.)[1]

2.  Darlene Robertson

For the network admin and network admin leads position group, Myers scored the employees as follows:

| Employee Name | Job Title | Overall Score | Selected for RIF |
|---|---|---|---|
| Alston, Richard A. | Network Admin | 310 | No |
| Martin, Nathan T. | Network Admin | 205 | Yes |
| Ward, Warren D. | Network Admin | 335 | No |
| Cox, James | Network Admin Lead | 370 | No |
| Robertson, E.D. (aka Darlene) | Network Admin Lead | 185 | Yes |

(*Id.*, PageID # 752, ¶ 41.)

Robertson and Martin, as the two lowest scoring network admins, were selected for the RIF.  (SUMF, RE 33, PageID # 752, ¶ 42.)  Relative to the other network admins and network admin leads, Robertson scored low in the categories of "relevant job experience and training for targeted position," "versatility/ability to perform other duties when needed," "interactive skills/cooperation with co-workers, supervisors, and/or subordinates," and "customer service," receiving a score of 20 in each of those categories.  (*Id.*, PageID # 752–53, ¶ 43.)

---

[1] Appellants dispute Myers's assessment of Cummins's performance, but they do not dispute that Myers formed this assessment.  (SUMF, RE 33, PageID# 751, ¶ 40.)

A documented example of Robertson's performance deficiencies occurred in June 2021.  On June 3, 2021, at 12:39 p.m., Myers sent an e-mail to Robertson and two other Tennova IT employees (Joseph Lambert and Ramona Powell) forwarding a backup report card showing that seven (7) of Tennova's back-up servers were failing.  (*Id.*, PageID # 753, ¶ 44.)  Later that same evening, at 8:06 p.m., Myers e-mailed Robertson after not receiving a response to his e-mail and stated that "I am writing to let you know that this continued pattern of no communication will not be tolerated.  We have discussed this in person many times and I am copying HR so that you understand the importance of the basic expectation of communication.  We are less than a week from a major system crash and now it appears that we have had no backups in at least 3 days.  I expect a timely response as to your action plan related to this backup situation.  Ramona informed me that you have been the office all day today."  (*Id.*, PageID # 753–54, ¶ 45.)  The next morning at 9:11 a.m., Robertson responded to Myers and apologized for "missing the backup report," and then explained what tasks she had been completing instead of fixing the server issue.  (*Id.*, PageID # 754, ¶ 46.)  Myers responded at 9:17 a.m. on June 4, 2021, and stated "there will always be more to do than can be done in a day but I need the front in [sic] communication to help with prioritizing the work when necessary.  No backups for 4 days would have been #1."  (*Id.*, ¶ 47.)  Robertson admitted she knew Myers

11

had issues with her communication and admitted addressing the backups should have been prioritized.  (*Id.*, PageID # 754–55, ¶ 48.)

Myers had other issues with Robertson's reluctance to use his preferred method of communication, Google Chat. In Myers's assessment, Robertson reluctantly participated in using Google Chat, which was his preferred method of communicating with employees.  (*Id.*, PageID # 755, ¶ 49.)  Robertson admitted Myers had a discussion with her about the importance of using Google Chat, and Robertson admitted that she was trying to adjust to Myers's communication preferences to use Google Chat to discuss the issue first before seeking to fix it.  (*Id.*, PageID # 755–56, ¶ 50.)

Further, Myers had told Robertson that everyone working at the old ambulatory surgery center at St. Mary's hospital was moving back to working at the hospitals, and in Myers's assessment, Robertson was more resistant than others about moving back to working at hospitals.  (*Id.*, PageID # 756, ¶ 51.)  Myers observed that, in his assessment, Robertson resisted traveling for work to the Lenoir City Data Center for after-hours and emergency operational support and wanted to travel only when convenient for her and not as necessarily dictated by business needs.  (*Id.*, ¶ 52.)

3. David Sullivan

The next category of jobs were network techs and systems analysts, which were job titles that primarily fell under the deskside employee category. (*Id.*, PageID # 757, ¶ 53.) For the systems analysts and the network techs (i.e., deskside employees), Myers scored the employees as follows:

| Employee Name | Job Title | Overall Score | Selected for RIF |
|---|---|---|---|
| Cochran, Timothy | Network Tech | 260 | No |
| Grimsley, Glenn | Network Tech | 260 | No |
| Vest, Paul L. | Network Tech | 305 | No |
| Nguyen, Kevin C. | Systems Analyst | 275 | No |
| Sullivan, David C. | Systems Analyst | 215 | Yes |
| Thompson, Stephen M. | Systems Analyst | 260 | No |
| Wyrick, Phillip | Systems Analyst | 185 | Yes |

(*Id.*, PageID # 757–58, ¶ 54.) Sullivan and Wyrick, as the two lowest scoring deskside employees, were selected for the RIF. (*Id.*, PageID # 758, ¶ 55.)

Relative to the other deskside employees, Sullivan scored low in the categories of "relevant job experience and training for targeted position," "versatility/ability to perform other duties when needed," and "problem-solving ability," with him receiving a score of 20 for each of those categories. (*Id.*, ¶ 56.) In Myers's assessment, Sullivan struggled with the transition to Cerner because he struggled understanding how the Cerner environment interacted with the Thin Client environment and the end user, how they use those applications, and just providing the general support needed for a deskside employee. (*Id.*, PageID # 758–59, ¶ 57.)

13

Also, in Myers's assessment, Sullivan struggled with being able to understand and support Tennova's new printing platform called UniPrint.  (*Id.*, PageID # 759, ¶ 58.) Myers also recalls a time when the Director of Surgery at North Knoxville Medical Center informed Myers that the hospital could not do surgeries that day because Sullivan could not fix their PCs and Myers had to send another deskside employee to address the issue.  (*Id.*, ¶ 59.)

### F.   Job Duties of Employees Subject to RIF Assumed by Remaining Staff.

On October 1, 2021, Myers and Owenby met with each employee subject to the RIF individually to inform them of their termination, provide them with information on benefits, and present them with a severance agreement.  (*Id.*, PageID # 759–60, ¶ 60.)  On October 1, 2021, Kevin Morrison, the Market CFO, sent an email announcing the RIF, and included a PowerPoint that Myers created explaining how the responsibilities of each terminated employee would be reallocated to Tennova's remaining IT employees.  (*Id.*, PageID # 760, ¶ 61.)

As part of the restructuring, Joseph Lambert (an existing Tennova IT employee) took on Robertson's job duties and Tim Cochran (an existing Tennova IT employee) took on Sullivan's job duties.  (*Id.*, ¶ 62.)  The number of help desk analysts (where Cummins worked) had been reduced and the help desk revamped as part of the restructuring to increase presence between 7 a.m. and 7 p.m. when most

of the calls occurred (as could now be tracked on Tennova's new Genesis phone system).  (*Id.*, ¶ 63.)

Overall, the following IT Department employees were laid off on October 1, 2021:

| Employee Name | Title | Age at Time of RIF |
|---|---|---|
| Cristillo, Julie O. | Applications Analyst | 53 |
| Hayes, Diana L. | Applications Analyst | 67 |
| Cummins, Charles P. | Help Desk Analyst | 68 |
| Henegar, Tara | Help Desk Analyst | 46 |
| Rittenhouse, Angela | Help Desk Analyst | 54 |
| Grillot, Ayse S. | Information Systems Manager | 53 |
| Powell, Ramona C. | Information Systems Manager | 69 |
| Rupard, Larry D. | Information Systems Manager | 64 |
| Martin, Nathan T. | Network Administrator | 47 |
| Robertson, Darlene | Network Administrator Lead | 69 |
| Hickens, Larry D. | Network Analyst | 62 |
| Scott, Stephen B. | Systems Administrator | 47 |
| Sullivan, David C. | Systems Analyst | 68 |
| Wyrick, Phillip | Systems Analyst | 57 |

(*Id.*, PageID # 760–61, ¶ 64.)

The following IT Department employees were not selected for the October 1, 2021 RIF:

| Employee Name | Title | Age at Time of RIF |
|---|---|---|
| Alston, Richard A. | Network Admin | 57 |
| Beckman, Harold L. | Help Desk Analyst | 49 |
| Cochran, Timothy | Network Tech | 57 |
| Cox, James | Lead Network Admin. | 42 |

15

| Cox, Tammy R. | Clinical Informaticist | 42 |
|---|---|---|
| Dyer, Thomas A. | Help Desk Analyst | 64 |
| Grimsley, Glenn | Network Tech | 24 |
| Hall, Justin | Sup Information Systems | 32 |
| Hannan, Tammy R. | Director Clinical Informaticist | 57 |
| Johnson, Martha H. | Clinical Informaticist | 67 |
| Lambert, Joseph D. | Systems Administrator | 56 |
| McDaniel, Leigh A. | Applications Analyst | 61 |
| Meadows, Craig A. | Lab Information Systems Coordinator | 38 |
| Nguyen, Kevin C. | Systems Analyst | 31 |
| Painter, Jeremy | Clinical Informaticist | 44 |
| Smith, Troy V. | PACS Administrator | 49 |
| Stack, Taylor | Sup Information Systems | 31 |
| Thompson, Stephen M. | Systems Analyst | 58 |
| Tipton, Michael L. | PACS Administrator | 65 |
| Vest, Paul A. | Network Tech | 47 |
| Ward, Warren D. | Network Admin | 49 |
| Wilson, Carol A. | Applications Analyst | 52 |

(*Id.*, PageID # 761–62, ¶ 65.)

Although Tennova had to replace certain individuals who were not part of the RIF but self-selected to end their employment with Tennova, Tennova's IT Department still has approximately the same number of employees since the RIF (with the exception of moving the PACS administrators and clinical informaticists from Cleveland to 8515 after the RIF).  (*Id.*, PageID # 762–63, ¶ 66.)

### G.    Cummins Signs Severance Agreement, Attempts to Revoke It After 7-Day Deadline.

Tennova presented Cummins with a severance agreement during his meeting with Myers and Owenby to discuss his termination on October 1, 2021.  (*Id.*, PageID

# 763, ¶ 67.)  The severance agreement stated "If Employee signs this Agreement, [he] has seven (7) days to revoke the Agreement . . . . If Employee does not revoke this Agreement, it shall be in full force and effect and each party shall be obligated to its terms."  (*Id.*, ¶ 68.)

Cummins executed the severance agreement on October 1, 2021.  (*Id.*, ¶ 69.) Following Cummins's execution of the severance agreement, Tennova mailed a severance check to Cummins.  (SUMF, RE 33, PageID # 763–64, ¶ 70.)  On October 20, 2021, Cummins mailed a letter attempting to revoke the severance agreement by sending a letter to Owenby stating that he "decided not to take the severance package."  (SUMF, RE 33, PageID # 764, ¶ 71.)  Sometime thereafter, Cummins physically returned the severance check to Owenby at North Knoxville Medical Center.  (*Id.*, ¶ 72.)

### H.    Myers Did Not Consider Employees' Ages When Conducting RIF.

When conducting the RIF, Myers did not know the ages of the members of his IT Department, and he did not look up their dates of birth in Tennova's employment records.  (SUMF, RE 33, PageID # 764, ¶ 73.)  Before they were selected for the RIF, neither Sullivan, Cummins, nor Robertson had ever communicated any information to Myers about their respective ages.  (SUMF, RE 33, PageID # 765, ¶¶ 74–76.)  Neither Sullivan, Robertson, nor Cummins has ever heard Myers say anything about their ages.  (SUMF, RE 33, PageID # 765–66, ¶¶ 77–79.)  Both

17

Robertson and Cummins acknowledged that Tom Dyer (age 64 at the time of the RIF) was not selected for being laid off because he was a valuable employee.[2] (SUMF, RE 33, PageID # 766, ¶¶ 80–81.)

## I. Myers's Alleged Comment Regarding Age of Applicant Unconnected to RIF.

Larry Rupard testified during his deposition that, at some point before Rupard was laid off, Myers directed Rupard not to hire a candidate in her 50s for CHS's Cleveland hospital that he was interviewing because she was "too old" and he had "enough old people." (*Id.*, ¶ 82.) Before the October 1, 2021 RIF, the hospital in Cleveland, Tennessee was not part of "8515," and IT employees working at the Cleveland hospital were not considered for the RIF. (*Id.*, ¶ 83.)

Rupard cannot remember the candidate's name that Myers allegedly did not want to hire. (*Id.*, PageID # 766–67, ¶ 84.) Rupard cannot remember when that alleged incident with Myers occurred, only that it happened before the RIF. (*Id.*, PageID # 767, ¶ 85.) Rupard has never read or heard any comment from Myers about the age of any of the older employees terminated as part of the RIF, including himself. (*Id.*, ¶ 86.) Rupard "shrugged [] off" Myers's comment. (*Id.*, ¶ 87.) Rupard did not report the alleged statement to HR or the compliance department, or anyone

---

[2] On June 29, 2021, Myers lobbied for Tom Dyer to receive a 14.99% raise in order to keep him from leaving Tennova. (SUMF, RE 33, PageID # 768, ¶ 90.)

else at Tennova or CHS.  (*Id.*, ¶ 88.)  Rupard only told Robertson about Myers's alleged comment.  (*Id.*, ¶ 89.)

**J.    Myers Attempts to Find Jobs for Employees Subject to RIF.**

After the RIF, three employees who had been RIF'd (Julie Cristillo, Larry Rupard, and Ramona Powell) were offered positions with CHS's security support, and Cristillo accepted.  (SUMF, RE 33, PageID # 768, ¶ 91.)  Myers had recommended Cristillo, Rupard, and Powell to CHS's corporate office for the positions after selecting them for the RIF.  (*Id.*, ¶ 92.)

## SUMMARY OF THE ARGUMENT

Appellants cannot meet the heightened *prima facie* standard in an age discrimination case involving a RIF because they cannot provide additional direct, circumstantial, or statistical evidence to show Tennova singled them out for discharge for impermissible reasons. Appellants have no circumstantial evidence that Myers singled them out when conducting the RIF because, among other reasons, Myers subjected Appellants to the same criteria – provided to him by Human Resources – that he used for every other member of the IT Department. Appellants do not and cannot explain how they were singled out when Myers treated them the same as everyone else.

Despite this lack of sufficient evidence, the District Court held that all Appellants had to show was "that their evidence raises 'suspicion' that age was the cause of their terminations." Tennova respectfully asserts this Court's heightened RIF standard requires more than a mere suspicion, and Appellants cannot meet it.

Even if Appellants could establish a *prima facie* case, the District Court correctly held that Appellants cannot show that Tennova's legitimate, nondiscriminatory reason for terminating them – the RIF – was pretextual. None of the material facts are disputed – a RIF occurred, and Appellants and 11 other employees were selected for it based on their low scores. Appellants claim the District Court did not consider the "totality of the circumstances," but they fail to

20

point to any evidence the District Court missed or ignored.  Appellants have evidence of _one_ alleged remark from Myers that was allegedly made at some undefined time regarding an unknown applicant for an entirely different location that was not part of the RIF.  The District Court considered this within the pretext context as circumstantial evidence, and correctly determined it was an isolated comment not connected to the RIF.  As explained below, none of Appellants' pretext arguments create a genuine issue of material fact necessitating reversal.

Finally, as an independent basis for summary judgment, Cummins waived his right to assert his ADEA claim by executing an enforceable severance agreement that contained a valid waiver of his ADEA claim.  Although Cummins attempted to revoke that agreement, he did so outside of the time allowed under the ADEA and the terms of the severance agreement and has therefore waived his ADEA claim.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo*. *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 559 (6th Cir. 2022). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). Fact disputes are material and genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Kirilenko-Ison v. Bd. of Educ.*, 974 F.3d 652, 660 (6th Cir. 2020)). When evaluating a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw "'all justifiable inferences' in [that] party's favor." *Id.* (quoting *Kirilenko-Ison*, 974 F.3d at 660). At this stage, the Court may not weigh evidence or make credibility judgments. *Id.* at 559–60.

# ARGUMENT

## A.    Appellants Cannot Establish a *Prima Facie* Case of Age Discrimination.

Appellants cannot establish the *prima facie* elements of their ADEA claims because they cannot show additional direct, circumstantial, or statistical evidence tending to indicate that Tennova singled out Appellants for impermissible reasons.[3]

In an age discrimination case, "[t]he first step of the *McDonnell Douglas* test requires the plaintiff to establish a prima facie case of age discrimination by showing that the plaintiff (1) was a member of a protected class of persons (i.e., persons 40 years of age or over), (2) was discharged, (3) was qualified for the position held, and (4) was replaced by someone outside of the protected class." *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008) (citation omitted). "If the termination arises as part of a work force reduction, this [C]ourt has modified the fourth element to require the plaintiff to provide 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Geiger v. Tower Auto.*, 579 F.3d 614, 623 (6th Cir. 2009) (quoting *Barnes v. GenCorp*, 896 F.2d 1457, 1465 (6th Cir. 1990)).

---

[3] Appellants had argued to the District Court that Myers's alleged statement to Rupard constituted direct evidence of age discrimination, but Appellants have abandoned that argument on appeal. In their brief, Appellants "do not dispute the lower court's finding on the issue of direct evidence" and instead are proceeding "only under the familiar *McDonnell Douglas* framework for circumstantial evidence." (Appellants' Br. at 26 n.3.)

Because Appellants conceded in their response to Tennova's Motion for Summary Judgment and in their principal brief that Tennova terminated appellants as part of a RIF, (Pls.' Resp. to Def.'s Mot. for Summ. J., RE 32, PageID # 513; Appellants' Br. at 29),[4] to establish their *prima facie* case, Appellants must show "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Id.* (quoting *Barnes*, 896 F.2d at 1465).

Appellants argue that circumstantial evidence shows that Tennova singled out Appellants for impermissible reasons, but as discussed below, Appellants cannot meet their burden.

    1. <u>Appellants Underwent the Same Subjective Assessment as Everyone Else in the IT Department.</u>

As its first argument concerning circumstantial evidence establishing the fourth element of their *prima facie* case, Appellants contend that Tennova's "use of subjective criteria in its RIF calls into question the motivation of the RIF." (Appellants' Br. at 29.) Appellants, however, must show that they were "singled out" for termination because of their ages. *See Barnes*, 896 F.2d at 1465. Appellants cannot make this showing because it is undisputed that Myers used the *same* criteria when he evaluated *every* employee in the IT Department. (*See* SUMF, RE 33,

---

[4] When referring to filings made in this Court, this brief will cite to the "Page" number on the top margin of the file stamped copy.

PageID # 747–49, ¶¶ 26–34.)  Being "singled out" requires something different than being treated the same as everyone else.  Yet Appellants have no evidence they were treated any differently than any other member of the IT Department, laid off or not laid off.

> ### 2. Use of Subjective Criteria Did Not Disguise Discriminatory Animus Because Employees of Similar Ages as Appellants Underwent the Same Analysis and Were Not Laid Off.

Second, Appellants argue that the use of subjective criteria supports their *prima facie* case.  (Appellants' Br. at 30.)  However, it is well established in this Court that there is nothing inherently discriminatory or suspect about an employer subjectively evaluating its employees to decide who to lay off.  *See Beck v. Buckeye Pipeline Servs., Co.*, 501 F. App'x 447, 451 (6th Cir. 2012) ("When all is said and done, the use of subjective criteria does not by itself show discrimination, particularly in a reduction in force case.").  Furthermore, when this subjective analysis includes supervisors having flexibility in determining a matrix score for employees (like Myers did here), this Court has reinforced that "flexibility in determining individual components of a matrix score[] does not indicate discrimination." *See Browning v. Dep't of Army*, 436 F.3d 692, 697 (6th Cir. 2006).

Rather than being discriminatory *per se*, this Court has held that the question when employing a subjective analysis "is whether the subjective criteria were used to disguise discriminatory action." *See Beck*, 501 F. App'x at 450 (quoting *Grano v.*

*Dep't of Dev. of Columbus*, 699 F.2d 836, 837 (6th Cir. 1983)). Appellants cite this same caselaw in their brief (Appellants' Br. at 29–30), but then fail to offer any explanation as to how Myers used any subjective criteria to disguise any discriminatory action. As discussed above, all members of the IT Department were subjected to the *same* subjective criteria.

Moreover, Myers did not come up with these criteria; Tennova's HR provided them to him. (SUMF, RE 13, PageID # 747, ¶¶ 23–26.)

Appellants also ignore undisputed facts that Myers – while employing the same subjective analysis that he used for Appellants and every other member of the IT Department – chose to *keep* workers of about the *same age* as Appellants, specifically Thomas A. Dyer (age 64), Martha H. Johnson (age 67), Leigh McDaniel (age 61), and Michael L. Tipton (age 65). (SUMF, RE 33, PageID # 761–62, 65.) Myers's use of subjective criteria to disguise discriminatory action would have necessarily resulted in the termination of these employees (Dyer, Johnson, McDaniel, Tipton) as well since they were of comparable ages (in their 60s) to Appellants. Yet they were retained, which further highlights that Myers did not use subjective criteria to disguise his attempt to get rid of employee based on age. If he had, the oldest employees would have all been laid off; they were not.

Appellants also contend that Myers's subjective analysis was a disguise for discrimination because "every person who was chosen for the RIF was over forty

(40) years of age." (Appellants' Br. at 32.) Appellants omit that 17 of 22, or more than 77%, of the employees retained in the RIF were age 40 or older. (SUMF, RE 33, PageID # 761–62, ¶ 65.) Regardless, the Sixth Circuit has noted that the "ADEA was not intended to protect older workers from the often harsh economic realities of common business decisions and the hardships associated with corporate reorganizations . . . ." *Allen v. Diebold, Inc.*, 33 F.3d 674, 677 (6th Cir. 1994). The Sixth Circuit has also ruled that the ADEA does not require that older workers receive any special treatment when an employer is conducting a RIF. *See Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 517 (6th Cir. 1991) ("The ADEA only bars discrimination on account of age; it does not place on employers an affirmative obligation to retain older workers whenever a reduction in staff becomes necessary."). Therefore, the fact that all employees selected for the RIF were older than 40 does not disguise discrimination, especially when 77% of the retained employees were also in the protected age group.

3. <u>Appellants Had the Same Level of Interaction with Myers as Other IT Employees.</u>

Third, Appellants claim that Myers subjective analysis was "ripe for discrimination" based on his purported limited interaction with them. (Appellants' Br. at 30–31.) Appellants do not show how they were different from any other member of the IT Department in their level of interactions with Myers. Furthermore, Appellants do not contend that the criteria Myers used — given to him by HR — to

score the members of the IT Department in and of themselves disfavor older workers. *See Anderson v. Otis Elevator Co.*, 923 F. Supp. 2d 1032, 1068 (E.D. Mich. 2013) ("Absent a challenge to the underlying criteria used in the evaluation process, employers are free to make wholly subjective, unpopular and imperfect decisions."). As a result, Appellants are merely disagreeing with Myers's assessment of their performance, which the Sixth Circuit has held is insufficient to create a genuine issue of material fact. *See Browning*, 436 F.3d at 698 ("Whether Browning agrees with Courtney's scoring method, or whether he believes that he was more qualified for the position that Rhodes ultimately filled, is irrelevant to the age discrimination inquiry – what matters is Courtney's perception of Browning's qualifications.").

4. <u>Myers's Alleged Comment About an Unidentified Candidate for a Different Hospital Does Not Show Discriminatory Animus Because It Was Not Directed at Appellants nor Connected to RIF.</u>

Fourth, Appellants argue that Myers had "animus toward older workers" because of his alleged comment to Rupard not to hire an unidentified candidate for an entity not included within the RIF because she was too old and he had "enough old people." (Appellants' Br. at 31.) It is undisputed that this alleged comment was not about Appellants themselves, as Appellants acknowledge they have never heard Myers make <u>any</u> comments about their ages. (SUMF, RE 33, PageID # 765, ¶¶ 77– 79.) "Age-related comments" that do not refer "<u>directly to the worker</u>" do not support "an inference of age discrimination." *Phelps v. Yale Sec., Inc.*, 986 F.2d

1020, 1025 (6th Cir. 1993) (emphasis added).  The case Appellants rely on, *Diebel v. L & H Resources, LLC*, 492 F. App'x 523, 530–31 (6th Cir. 2012), also concerned age-related comments made directly to the plaintiff.  That undisputedly did not occur here, and thus is it not circumstantial evidence of age discrimination.

Appellants also argue that at the time this comment was made, Myers knew that a RIF was to be conducted.  (Appellants' Br. at 31.)  Therefore, according to Appellants, "this means that Myers's animus towards older workers existed at the time of the RIF." (*Id.*)  Appellants do not know, however, when the alleged comment was made because it is undisputed that Rupard "cannot remember when that alleged incident with Myers occurred, only that it happened before the RIF."  (SUMF, RE 33, PageID # 767, ¶ 85.)  Appellants acknowledge that the alleged statement could have occurred anytime within an 11-month period of November 2020 to October 2021. (Pls.' Resp. in Opp'n to Mot. for Summ. J., RE 32, PageID # 511.)  Moreover, the evidence in the record shows that Myers did not start scoring candidates for the RIF until July 2021, nine (9) months after he first started in early November 2020. (Myers Dep. Ex. 2, RE 29-2, PageID # 227–28.)  An alleged comment about a

position at an entity that was not included as part of the RIF[5] that could have occurred nine months before he actually started scoring candidates is too "isolated," made outside of the "decision-making process," and not "proximate in time to the act of termination" to show that "discriminatory animus motivated [their] discharge." *Peyton v. Kellermeyer Co.*, 115 F. App'x 825, 829 (6th Cir. 2004).[6] This is especially true given that the alleged comment did not concern Appellants nor anyone else laid off as part of the RIF.

Accordingly, because Appellants cannot put forward any additional direct, circumstantial, or statistical evidence required to show that they were singled out for termination because of their age, Appellants cannot establish a *prima facie* case.

---

[5] Myers's alleged comment concerned a candidate for hire at an affiliated Cleveland, Tennessee hospital. (SUMF, RE 33, PageID # 766, ¶ 82.) Appellants admit as undisputed that Myers "was considering all employees under the entity '8515' that were employees for the RIF." (*Id.*, PageID # 748, ¶ 28.) Appellants further admit as undisputed that before the October 1, 2021 RIF, the Cleveland hospital was not part of "8515" and IT employees working at the Cleveland, Tennessee hospital were not considered for the RIF. (*Id.*, PageID # 766, ¶ 83.) As a result, it is undisputed that the position that Myers's alleged comment concerned was not considered for the RIF in question.

[6] The other case Appellants rely upon, *Pelcha v. MW Bancorp Inc.*, 455 F. Supp. 3d 481 (S.D. Ohio 2020), in which summary judgment was granted to the employer, is inapposite because it is not a RIF case and the alleged ageist comments occurred two months before the plaintiff's termination. *Id.* at 503. No such similar temporal proximity exists here.

5. <u>More Than "Suspicion" Required to Establish *Prima Facie* Case under RIF Framework.</u>

Appellants claim that they can establish their *prima facie* case because their evidence is enough to raise a "suspicion" that age was the cause of Appellants' termination.  (*See* Appellants' Br. at 31.)  This argument echoes the District Court, which found that "to establish Plaintiffs' prima facie case, it is enough that their evidence raises 'suspicion' that age was the cause of their terminations." (Mem. Op., RE 56, PageID # 886 (citing *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004).)

The District Court misapplied *Rowan* by relying on a single sentence form that case, mentioned in dicta, to find that Appellants could establish a *prima facie* case.  But *Rowan* doesn't hold that mere "suspicion" of an improper motive is enough to make out a *prima facie* case in a RIF case – that would conflict with the rationale of *Barnes* which raises the *prima facie* standard in RIF cases.  Indeed, evidence giving rise to a mere "suspicion" that a plaintiff was terminated because of his/her age cannot be "<u>additional</u> direct, circumstantial, or statistical evidence <u>tending to indicate</u> that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes*, 896 F.2d at 1465 (emphasis added).  Rather than mere suspicion, "the guiding principle [in a reduction in force case] is that the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age . . . ."

31

*Gragg v. Somerset Tech. Coll.*, 373 F.3d 763, 767–68 (6th Cir. 2004) (quoting *Barnes*, 896 F.2d at 1466); *LaGrant v. Gulf & Western Mfg. Co., Inc.*, 748 F.2d 1087, 1090–91 (6th Cir. 1984) (mere showing that younger department head was retained and plaintiff, also a department head, was laid off, was insufficient to state *prima facie* case); *Sahadi v. Reynolds Chem.*, 636 F.2d 1116, 1118 (6th Cir. 1980) ("If plaintiff's case-in-chief is viewed as satisfying the requirements for a prima facie case of age discrimination, then every employer who terminates an employee between 40 and 70 years of age under any circumstances, will carry an automatic burden to justify the termination"); *Adams v. Proto Plastics, Inc.*, 151 F. App'x 468, 470 (6th Cir. 2005) (holding that "substantially younger" employees in comparable positions were retained after workforce reduction was insufficient for *prima facie* case).

The evidence here—the use of subjective criteria that Myers applied to *every single employee* and an isolated, alleged statement made at an unknown time about an unknown person—is not "sufficiently probative" or indicative of a discriminatory motive to single out Appellants because of their age. Myers spent roughly the same amount of time with each of his employees, including Appellants, a fact they admit in their opening brief. (*See* Appellants' Br. at 10.) And, as noted above, Appellants do not dispute that Myers had multiple interactions with Appellants that provided Myers with legitimate, non-discriminatory reasons to believe that Appellants should

not score highly in metrics like problem-solving ability, interactive skills and cooperation with coworkers, customer service, and reliability.

To the contrary, the evidence shows that Myers did not have a bias against older employees. Myers retained employees of a similar age to Appellants based on their job performance, lobbied for one to receive a raise a few months before the RIF, and referred other employees of a similar age terminated as part of the RIF to other positions within CHS. As a whole, this evidence is insufficient to allow a factfinder to believe that Tennova intentionally discriminated against Appellants because of their age, and summary judgment was appropriate because Appellants cannot establish a *prima facie* case.

**B.**   **Even if Appellants Could Establish a *Prima Facie* Case, this Court Should Affirm the District Court's Holding that Appellants Failed To Show That Tennova's Legitimate Non-Discriminatory Reason for Terminating Appellants Was Pretext for Age Discrimination.**

Even if Appellants were able to establish a *prima facie* case, this Court should affirm the District Court's holding that Appellants failed to show that Tennova's legitimate, non-discriminatory reason for terminating them and the other laid off IT employees – the RIF – was pretext for age discrimination.

1.   It Is Undisputed That a RIF Occurred and Undisputed that Appellants Were Selected for It Along with 11 Other IT Department Employees Based on Their Low Scores.

Under the *McDonnell Douglas* burden-shifting framework, if Appellants can establish a *prima facie* case, the burden shifts back to Tennova to articulate a

legitimate, non-discriminatory reason for Appellants' termination. *See Barnes*, 896 F.2d at 1464 (citation omitted). As the District Court noted, Tennova's asserted reason was the elimination of Appellants' positions, or the RIF. After scoring employees according to various criteria, Tennova terminated the lowest-scoring employees within their work group. Those criteria, among others, were: "(1) [r]elevant job experience and training for targeted position; (2) overall job performance (per latest performance evaluation); (3) versatility/ability to perform other job duties when needed; (4) problem-solving ability; (5) interactive skills/cooperation with co-workers, supervisors and/or subordinates; (6) customer service; [and] (7) attendance/reliability." (Mem. Op., RE 56, PageID # 887 (citing SUMF, RE 33, PageID # 749, ¶ 33).)

Applying this criterion, which applied for all IT Department employees and not just Appellants, it is undisputed that Cummins, along with fellow help desk analysts Tara Henegar and Angela Rittenhouse, were the three lowest scoring help desk analysts, and all three were selected for the RIF as a result. (SUMF, RE 33, PageID # 751, ¶ 38.) It is further undisputed that Robertson, along with Nathan T. Martin, were the two lowest scoring network administrators and network administrator leads, and both of them were selected for the RIF as a result. (*Id.*, PageID # 752, ¶ 41.) Finally, it is undisputed that Sullivan, along with

Phillip Wyrick, were the two lowest scoring deskside employees and were selected for the RIF as a result. (*Id.*, PageID # 758, ¶ 55.)

All of this is undisputed; Appellants just disagree with Tennova's scoring of them and Myers's overall assessment of their performance, which is insufficient to establish pretext. Accordingly, the District Court found that "Tennova satisfied its burden of articulating a legitimate, non-discriminatory reason" for Appellants being laid off – along with 11 other members of the IT Department. (Mem. Op., RE 56, PageID # 887.)

> ### 2. The District Court Correctly Held Appellants Did Not Establish a Genuine Issue of Material Fact Regarding Whether Tennova's Proffered Reason – the RIF –Actually Motivated the Discharge.

To show an employer's legitimate, non-discriminatory reason for an adverse employment action was pretextual, Appellants must show either "(1) that the proffered reason[] had no basis in fact, (2) that the proffered reason[] did not actually motivate [their] discharge, or (3) that they were insufficient to motivate discharge." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Geiger*, 579 F.3d at 614. Appellants acknowledge a RIF occurred and that the RIF was sufficient to motivate their discharge. Appellants solely argue pretext is shown based on the RIF supposedly not actually motivating their discharge. (Appellants' Br. at 35.)

To prevail on this pretext factor, Appellants must produce "additional evidence of age discrimination" by showing circumstances "which tend to prove that an illegal motivation was *more likely* than that offered by the defendant." *Manzer*, 29 F.3d at 1084 (emphasis added). "In other words, the plaintiff argues that the sheer weight of the circumstantial evidence makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id.* Appellants have not and cannot make this showing, as the District Court correctly held.[7]

    a. *The District Court Considered the Totality of the Circumstances, and Appellants Do Not Identify any Evidence the District Court Overlooked.*

Appellants assert the District Court erred because it did not consider the "totality" of Appellants' evidence but instead "improperly examined each instance separately to reach the conclusion that none of the evidence presented shows pretext." (Appellants' Br. at 34.)

Despite their protestations that the District Court did not consider the totality of the circumstances, Appellants do not actually identify any evidence that the District Court overlooked or did not address. With the exception of one nuanced argument concerning an IT employee named Glenn Grimsley (addressed below),

---

[7] In addition to the reasons to be discussed below regarding why Appellants cannot show pretext based on circumstantial evidence, the arguments Tennova made above in the *prima facie* case analysis concerning circumstantial evidence are also applicable to why Appellants cannot create a genuine issue of material fact regarding pretext.

36

Appellants made the same arguments to this Court that it made to the District Court. The District Court addressed each of those arguments and rejected them. Appellants just do not agree with the District Court's conclusion.

In fact, the District Court's pretext analysis did not consider Appellants' purported pretext evidence in a vacuum. Rather, it did not the exact opposite. The District Court first addressed Appellants' pretext arguments as it related to "*All Plaintiffs*," breaking it out into a separate section. (*See* Mem. Op., RE 56, PageID # 888–90.) After addressing the pretext arguments that applied to "All Plaintiffs," the District Court then turned to addressing the pretext arguments applicable to the individual Appellants, discussing Cummins, Robertson, and then Sullivan, and rejected each one of them. (*Id.*, RE 56, PageID # 890–93.) This follows the same order of argument that Appellants themselves set forth in their brief to this Court. Accordingly, the District Court considered all evidence Appellants submitted – collectively and individually – and correctly granted Tennova summary judgment.

> b. *District Court Considered Myers's Alleged Statement as Circumstantial Evidence within Pretext Context and Correctly Held It Was an Isolated Comment Unrelated to the RIF.*

Contrary to Appellants' argument, the District Court considered Myers's alleged comment as <u>circumstantial</u> evidence of age discrimination, and correctly determined that it was an "isolated" comment that was "unrelated to Plaintiffs'

discharge," and thus failed to satisfy Appellants' summary judgment burden.  (*See* Mem. Op., RE 56, PageID # 888.)

Appellants inaccurately contend the District Court did not do so, arguing that the District Court "confus[ed] the pretext analysis with the direct evidence analysis" when it "conclude[d] that Myers's comment was not sufficient to satisfy Appellants' summary judgment burden."  (Appellants' Br. at 37 (citing Mem. Op., RE 56, PageID # 888).)  Appellants base their argument in large part on the District Court's citation to *Geiger*, and the portion of the case cited concerning whether a comment was direct evidence.  (*Id.*, at 36–37)  Yet Appellants fail to mention that in the very next line after citing *Geiger*, the District Court then quoted this Court's decision in *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998), which analyzed whether at least four alleged discriminatory remarks were circumstantial evidence of age discrimination within the pretext context.  *Id.* at 355.  Accordingly, the District Court did not confuse the pretext analysis with the direct evidence analysis – it quoted from the very case that Appellants rely upon.

    c.   *District Court Correctly Held that Myers's Alleged Statement to Rupard Was Not Sufficient to Withstand Summary Judgment.*

The District Court correctly determined that Myers's alleged comment not to hire an applicant for a position with a different entity not part of the RIF was not part of the decisional process and was isolated, and thus "fail[ed] to satisfy Plaintiffs'

summary judgment burden." (Mem. Op., RE 56, PageID # 888.) "Isolated . . . comments 'are too abstract . . . to support a finding of age discrimination." *Ercegovich*, 154 F.3d at 355 (quoting *Phelps*, 986 F.2d at 1025).

Notably, the facts and circumstances regarding Myers's alleged comment are undisputed for purposes of summary judgment.[8] These undisputed facts determine that the alleged comment was isolated, not connected to Appellants themselves, and not connected to the RIF in question.

It is undisputed that none of Appellants have ever heard or read any comments from Myers about their respective ages. (SUMF, RE 33, PageID # 765, ¶¶ 77–79.) It is undisputed that Myers's alleged comment was not made in connection with the RIF in question; his alleged comment concerned a candidate for hire at an affiliated, Cleveland, Tennessee hospital. (SUMF, RE 33, PageID # 766, ¶ 82.) It is undisputed that employees at the Cleveland, Tennessee hospital were not part of the entity considered for the RIF and employees at that hospital were not considered for the RIF. (SUMF, RE 33, PageID # 748, ¶ 28, PageID # 766, ¶ 83.) It is undisputed that Rupard "cannot remember when that alleged incident with Myers occurred, only that it happened before the RIF." (SUMF, RE 33, PageID # 767, ¶ 85.) Appellants acknowledge that the alleged comment could have occurred anytime within an

---

[8] Myers's disputes that he made the comment to Rupard (Myers Decl., RE 29-1, PageID # 148, ¶ 39), but Tennova has assumed he did make it for purposes of its Motion for Summary Judgment and does the same here.

11-month period, November 2020 to October 2021. (Pls.' Resp. to Def.'s Mot. for Summ. J., RE 32, PageID # 511.)

Based on the above undisputed facts, the District Court correctly held that the alleged comment "was not a part of the 'decisional process' that led to Plaintiffs' termination in the RIF." (Mem. Op., RE 56, PageID # 888.) The undisputed facts discussed immediately above confirm the District Court's assessment was correct.

In addition, the District Court correctly held that the statement was "isolated" because "Plaintiffs point to no other evidence of Myers making comments about employees' ages." (*Id.*) That is also true – Myers's alleged comment to Rupard is the <u>only</u> comment that Appellants claim. Yet that *one* comment, assuming it occurred, was *one* comment on *one* occasion concerning *one* position that was not even part of the RIF, that could have occurred anytime during an 11-month period. This one alleged comment is hardly the "discriminatory atmosphere" that this Court discussed in *Ercegovich*. 154 F.3d at 356. Rather, Myers's comment is an isolated comment under this Court's precedent that does not show age discrimination. *See Trapp v. TSS Techs., Inc.*, 485 F. App'x 757, 761 (6th Cir. 2012) (holding that "deposition testimony that [an employee] overheard [an employer] refer to *another* employee as 'old and inflexible'" was "insufficient to satisfy [employee]'s burden of production on pretext"); *Phelps*, 986 F.2d at 1025–26 (noting that "[a]ge-related comments <u>referring directly</u> to the worker may support an inference of age

discrimination" but declining to find pretext "[b]ecause [employer] made the statements nearly a year before the layoff, . . . too long before the layoff to have influenced the termination decision.") (citation omitted and emphasis added).

Appellants rely on *Ercegovich* for the proposition that discriminatory statements made by a manager several months prior to the elimination of a position can be enough to show pretext, or at least defeat summary judgment. (Appellants' Br. at 38 (citing *Ercegovich*, 154 F.3d at 357).) But Appellants' reading of *Ercegovich* ignores much more evidence of age discriminatory bias than one comment made 14 months before the RIF, which differentiates it squarely from this case.

As an initial matter, in *Ercegovich*, this Court affirmed the district court's grant of summary judgment to the employer on the elimination of Ercegovich's position, holding that the plaintiff had failed to show that the RIF was a "mere pretext for intentional age discrimination." *Ercegovich*, 154 F.3d at 350–51. When it came to Ercegovich's claim that he was not permitted to transfer to other positions in the company, this Court reversed summary judgment to the employer. *Id.* at 357. Unlike Appellants here, who have evidence of one isolated alleged comment, *Ercegovich* had evidence of "numerous age-biased statements allegedly made by several individuals occupying high positions in Goodyear's Retail Sales Division." *Id.* at 354. These comments consisted of (1) the division's vice president remarking at a

41

staff meeting that "this company is being run by white haired old men waiting to retire, and this has to change"; (2) a personnel manager telling the plaintiff that the vice president in question "had directed that he did not want any employee over 50 years old on his staff"; (3) that the Director of Finance for the Retail Sales Division had remarked two months prior to Ercegovich's termination that "there were some people losing their jobs and they will – but they will be replaced by younger college grads at less money"; and (4) that the former Director of Human Resources stated about 14 months prior to the elimination of Ercegovich's position that "there will be no more promotions of anyone – to different departments – for anyone over age 51." *Id.* at  354–56.  Thus, contrary to Appellants' misreading, *Ercegovich* involved at least four discriminatory remarks, one of which occurred *two* months prior to the termination.

Here, the undisputed facts show that Myers's allegedly made *one* comment about *one* unknown individual at an unknown time for an entirely different business entity than the facility that Appellants that was not part of the RIF.  This is nowhere close to the "discriminatory atmosphere" this Court discussed in *Ercegovich*.  As a result, Myers's comments are "legally insufficient to create a material issue of fact as to whether [Appellant]'s termination was motivated by age discrimination.  *See, e.g.*, *Hausler v. Gen. Elec. Co.*, 134 F. App'x 890, 894 (6th Cir. 2005) (finding that an employee could not prove pretext where he "could not recall with any specificity

when the comments were made or how often they were made" and there "was no evidence that [any] age-related comments were directed at [the employee].").

Appellants then argue that the District Court "should have analyzed Myers'[s] comments in conjunction with the other evidence of pretext to determine whether, when viewed in its totality, the evidence is suggestive of pretext." (Appellants' Br. at 38–39.) But Appellants go on to recycle the same arguments concerning pretext that the District Court considered in its Memorandum Opinion. (*See* Mem. Op., RE 56, PageID # 889–93.) Again, the District Court considered *all evidence of pretext*, and Appellants cannot point to anything the District Court overlooked. They just do not like the result. *Compare* Mem. Op., RE 56, PageID # PageID # 878–94, *with Cerros v. Steel*, 288 F.3d 1040, 1046 (7th Cir. 2002) (holding that a district court did not consider the totality of the circumstances where "its ultimate conclusion [did] not seem to have taken into account the underlying facts it found earlier in the opinion.").

### d. *Use of Subjective Scoring Does Not Evidence Pretext.*

Appellants next argue that Tennova's "use of subjective criteria calls into question the motivations of the RIF." (Appellants Br. at 39.) As discussed above, this Court has been clear that an employer's use of subjective criteria when conducting a RIF "does not establish pretext." *See Browning*, 436 F.3d at 697 ("Although Browning argues that 'there were no underlying or documentary bases

43

to support the objectivity of the matrix . . . other than the selecting official's testimony,' this subjectivity, without more, does not establish pretext."); *Beck*, 501 F. App'x at 451 ("When all is said and done, the use of subjective criteria does not by itself show discrimination, particularly in a reduction in force case.").

Appellants question Myers's scores for them based on his "limited experience and personal interactions with Appellants and many of the other employees listed." (Appellants' Br. at 41.)  As the District Court noted when addressing this same argument (Mem. Op., RE 56, PageID # 889), Myers testified that he had worked with Sullivan between five and ten times, Cummins around five times, and Robertson face-to-face less than five times with ten or more phone calls."  (*Id.*)  As the District Court held, Appellants did not and do not explain "how that amount of interaction was insufficient to evaluate them for the RIF."  (*Id.*)

There is also no evidence that Myers spent less time with Appellants than any other employee or that Myers spent less time with older employees.  Nor do Appellants dispute that Myers used the same criteria when he evaluated *every* employee in the IT Department.  (SUMF, RE 33, PageID # 747–49, ¶¶ 26–34.) Appellants simply have no evidence they were treated any differently than any other member of the IT Department, laid off or not laid off.

The fact that Appellants disagree with Myers's scoring method, and the fact that Appellants believe they were more qualified than employees who were retained,

"is irrelevant to the age discrimination inquiry." *Browning*, 436 F.3d at 698.  This Court has "explicitly held that 'the law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with.'" *Id.* (quoting *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996)).

Moreover, Appellants do not allege that the evaluation criteria itself was biased.  Appellants do not contend that the categories Myers evaluated – which he received from HR – to score the members of the IT Department in and of themselves disfavored older workers.  *See Anderson*, 923 F. Supp. 2d at 1068 ("Absent a challenge to the underlying criteria used in the evaluation process, employers are free to make wholly subjective, unpopular and imperfect decisions.")  As a result, Appellants merely disagree with Myers's assessment of their performance, which the Sixth Circuit has held is insufficient to create a genuine issue of material fact. *See Browning*, 436 F.3d at 698.  Furthermore, as argued above, if Myers were indeed using subjective criteria to disguise discriminatory action, *Grano*, 699 F.2d at 837, then Myers – the alleged ageist – would have terminated all of the oldest workers. Instead, he did not terminate a 67-year-old, a 65-year-old, a 64-year-old, or a 61-year-old, while terminating six employees in their 40s and 50s.  (SUMF, RE 33, PageID # 760–62, ¶¶ 64–65.)

e. *Fact that All Employees Selected for the RIF Were 40 and Older Does Not Evidence Pretext.*

Appellants also contend the District Court erred because it found that Appellants could not show pretext by relying on the fact that every employee chosen as part of the RIF was over forty (40) years of age. (Appellants' Br. at 42.) Appellants contend that the District Court considered this argument in "isolation" simply because it stated that "Plaintiffs do not explain how the numbers alone could lead a jury to conclude that Plaintiffs' terminations were the result of discrimination." (*Id.*) What the District Court was stating though, within its analysis of Appellants' pretext evidence that applied to "all Plaintiffs," was that Appellants' argument "omit[ted] any statistics, let alone analysis," and the "terminated employees here are too few to draw strong conclusions from simply raw numbers." (Mem. Op., RE 56, PageID # 890.) As discussed above, of the 22 employees retained in entity 8515, 17 (or 77%) were 40 and older.

Appellants ignore that the "ADEA was not intended to protect older workers from the often harsh economic realities of common business decisions and the hardships associated with corporate reorganizations . . . ." *Allen*, 33 F.3d at 677. The ADEA simply does not require that older workers receive any special treatment when an employer is conducting a RIF. *See Wilson*, 932 F.2d at 517.

f. *Sullivan Cannot Create a Genuine Issue of Material Fact that His Termination Was Pretext for Age Discrimination.*

With respect to Sullivan, Appellants claim that Tennova "points to one instance in which Sullivan allegedly failed to find a solution to a computer issue, and Myers was unable to recall who fixed the issue, or if it was resolved at all." (Appellants' Br. at 43.)  Appellants vastly understate the issue.[9]  Myers testified that there was a specific time when the Director of Surgery at North Knoxville Medical Center informed Myers that the hospital could not do surgeries that day because Sullivan could not fix their PCs.  (SUMF, RE 33, PageID #759, at ¶ 59.)

Appellants also contend that Tennova "provides no actual proof" of Myers's belief "that Sullivan struggled with the transition to Cerner and with a new printing system, nor does it say these were the reasons Sullivan was chosen for the RIF." (Appellants' Br. at 43–44.)  To the contrary, Myers testified at his deposition and in Tennova's sworn Interrogatory responses, which Myers verified, about Sullivan not meeting job expectations, which included struggling with the transition to Cerner and other new platforms like UniPrint.  (Myers Dep. 180:21 – 183:24, RE 29-2, PageID # 198–99; Def.'s Resp. to Pls.' Interrogs., No. 16, RE 32-9, PageID # 548–49.)  Sullivan's self-serving, subjective views of his qualifications and job

---

[9] Contrary to Appellants' Brief, Myers testified that he believes Kevin Nguyen, another Systems Analyst, was sent to fix the issue. (Myers Dep. 186:2–16, RE 29-2, PageID # 200.)  Who fixed the issue after Sullivan could not is irrelevant though.

performance and disagreement with Myers's assessment does not create a genuine issue of material fact regarding pretext, as the District Court held.  (Mem. Op., RE 56, PageID # 892–93); *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 268–69 (6th Cir. 2010) (holding that a plaintiff's "subjective views in relation to other coworkers, without more, are insufficient to establish discrimination").

Appellants attempt to argue that a younger employee, Grimsley, was retained instead of Sullivan, even though he was relatively inexperienced.  (*See* Appellants' Br. at 44.)  Appellants point out that Myers scored Sullivan as a 20 on "relevant job experience and training for the targeted position" category while Myers gave Grimsley a 50.  (*Id.*)  Appellants claim that "Myers provides no explanation for how a 24-year old with no IT experience scored significantly higher than someone who had been in the position for 15 years."  (*Id.*)

Critically, however, Appellants did not argue before the District Court that a comparison of Grimsley's score to Sullivan's was evidence of pretext.  In fact, Appellants only ever claimed (falsely) that Grimsley was never considered for the RIF.  (*See* Pls.' Resp. to Def.'s Mot. for Summ. J., RE 32, PageID # 506; Def.'s Reply to Pls.' Resp. in Further Supp. of Def.'s Mot. for Summ. J., RE 34, PageID # 779 n.4.)  Accordingly, Appellants never raised that argument below and they have waived their argument regarding Grimsley's scoring on appeal.  *Frazier v. Jenkins*,

770 F.3d 485, 497 (6th Cir. 2014) ("Generally, we will not address arguments raised for the first time on appeal.").

Even assuming the argument was preserved, Appellants attempt to create a situation in which it was either Grimsley or Sullivan, and Myers picked the younger one so there must be pretext. That is simply not the case. Grimsley did not even assume Sullivan's job duties after the RIF. Tim Cochran, an existing IT employee who was age 57 at the time of the RIF, assumed Sullivan's job duties after he was laid off. (Myers Dep. 154:23 – 155:13, RE 29-2, PageID # 192; *id.*, Ex. 6, PageID # 230–34; Def.'s Resp. to Pls.' First Set of Interrogs., No. 13, RE 29-8, PageID # 441–44.) Further, Sullivan and Grimsley did not work at the same facility. Cochran worked at North Knoxville Medical Center, or "Tennova North," which is where Sullivan worked. (Myers Dep. 114:2–16, RE 29-2, PageID # 182; Sullivan Dep. 28:10–12, RE 29-3, PageID # 245.) Grimsley, on the other hand, worked at Turkey Creek Medical Center as a tech working on the floor of the hospital. (Myers Dep. 113:12 – 114:11, RE 29-2, PageID # 181–82.) A few months before the RIF, Myers needed to fill a vacancy at Turkey Creek and he contacted the Chief Nursing Officer, and the CNO at Turkey Creek recommended Grimsley. (Myers Dep. 115:16 – 116:3, RE 29-2, PageID # 182.) Myers wanted to fill the position with someone who knew Turkey Creek, like Grimsley. (Myers Dep., 119:4–22, RE 29-2, PageID # 183.) He also wanted someone with a great personality like Grimsley who could

49

interact well with nurses and teach them, and while Grimsley did not have formal IT training, he "grasped the IT" aspect of his position "very well." (Myers Dep., 120:21 – 121:14, RE 29-2, PageID # 183.)

In contrast, while Sullivan had much more experience than Grimsley from a strictly number-of-years standpoint, the experience Sullivan had was not "*relevant* job experience," the actual category Myers assessed. As Myers testified, after Tennova switched to Cerner in December 2020, Sullivan struggled with the transition to Cerner because he struggled understanding how the Cerner environment interacted with the Thin Client environment and the end user, how they use those applications, and just the general support needed for a deskside employee. (SUMF, RE 33, PageID # 758–59, ¶ 57.) Sullivan also struggled with the new printing platform called UniPrint with being able to understand that system and being able to support it. (SUMF, RE 33, PageID # 759, ¶ 58.) Stated simply, "the technology that [Sullivan] was used to and trained in had become obsolete," as Myers verified in Tennova's interrogatory responses. (Def.'s Resp. to Pls.' Interrogs., No. 14, RE 32-9, PageID # 546–47.)

This attempt to cherry-pick an instance where Tennova retained a younger employee does not show discriminatory animus. As the District Court noted (RE 56, PageID # 893), this Court has held that "the retention of an employee younger than a competent plaintiff is insufficient to establish a prima facie case of age

discrimination in the RIF context," much less be evidence of pretext. *See Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 527 (6th Cir. 2021).

Simply put, Sullivan's general disagreement with Myers's assessment of him is not evidence of discrimination, and this "evidence" does not support a finding of animus. *See Browning*, 436 F.3d at 698.

The remainder of Appellants' pretext argument as to Sullivan concerns the same argument addressed above that Myers did not have enough interaction with Sullivan to subjectively score him. Yet as the District Court held, Myers testified that he had worked with Sullivan between five and ten times. (Myers Dep. 57:21 – 58:20, RE 29-2, PageID # 167–68.) Appellants fail to explain why that amount is insufficient, or whether that was any different from any other member of the IT Department, as the District Court pointed out. (Mem. Op., RE 56, PageID # 892–93.)

> g. *Cummins Cannot Create a Genuine Issue of Material Fact that His Termination Was Pretext for Age Discrimination.*

Appellants contend that Tennova should not get to "score points" or "get credit" for retaining help desk analyst Tom Dyer, age 64, while terminating fellow help desk analyst Cummins at age 68. (Appellants' Br. at 46–47.) Appellants cannot explain why the alleged ageist Myers would have kept Dyer at age 64 while terminating Cummins as well as Angela Rittenhouse at age 54 and Tara Henegar at age 46 if he was truly motivated to discriminate on the basis of age. Clearly, if Myers

51

had truly intended on discriminating based on age, he would have laid off the oldest help desk employees; he did not.  Ironically, Robertson and Cummins provided the actual reason that Myers retained Dyer – because he was a valuable employee. (SUMF, RE 33, PageID # 766, ¶¶ 80–81.)

Appellants also claim that Myers did not rely on the elimination of Cummins's job duty that he spent 7 hours a week doing when scoring Cummins for the RIF. (Appellants' Br. at 47.)  It is undisputed that Cummins admitted that a portion of his job that he did everyday – driving from Knoxville to Lenoir City and back to change out the tapes at the Lenoir City Data Center – had been eliminated a few months before he was laid off.  (SUMF, RE 33, PageID # 751, ¶ 39.)  As the District Court recognized, Myers stated in Tennova's sworn interrogatory responses that Cummins failed to meet Tennova's legitimate expectations because after the transition to Cerner, the job duty of changing the tapes "was completely eliminated, and Mr. Cummins struggled to find an adequate amount of work."  (Defs.' Resp. to Pls.' Interrogs., No. 15, RE 32-9, PageID # 547.)

The remainder of Appellants' argument regarding pretext as to Cummins boils down to disagreement with Myers's assessment of Cummins performance, which as stated above is insufficient to show pretext.

h. *Robertson Cannot Create a Genuine Issue of Material Fact that Her Termination Was Pretext for Age Discrimination.*

As for Robertson, Appellants dispute that Robertson's failure to back up certain servers was a significant performance issue.  In reality, Myers's counseling concerned Robertson's failure to respond to his e-mail about the servers until the next day, not whether the servers should have actually been backed up.  (SUMF, RE 33, PageID # 753–55.)  Like Sullivan, however, Robertson's disagreement with Myers's opinion of her performance is not evidence of discrimination.  *See Browning*, 436 F.3d at 698.  Appellants also argue that "Defendant has not alleged that [communication issues] w[ere] the reason Ms. Robertson was terminated."  (Appellants' Br. at 44.)  But Robertson was terminated because of her low scores (SUMF, RE 33, PageID # 752, ¶¶ 41–42), including, but not limited to, her communication and interactive shortcomings that Myers discussed with her and Tennova outlined in its sworn responses to Appellants' interrogatories.  (Def.'s Resp. to Pls.' First Set of Interrogs., No. 16, RE 32-9, PageID# 548–49.)

\* \* \* \* \*

In sum, Appellants fail to show that Tennova's legitimate, nondiscriminatory reason for terminating them — the elimination of their positions — was pretext for age discrimination.  As a result, just as the District Court held, Appellants cannot show pretext, and the Court should affirm summary judgment.

### C.     Cummins Waived His ADEA Claim.

As independent grounds for summary judgment, Cummins waived his ADEA claim when he executed a severance agreement containing an enforceable waiver of his right to bring his ADEA claim.  ADEA claims can be released in a severance agreement if, among other requirements, an employee is given at least 7 days following the execution of the agreement to revoke it.  29 U.S.C. § 626(f)(1)(F)(ii), (G).  Once the revocation period expires, the severance agreement is enforceable.

Tennova presented Cummins with a severance agreement on October 1, 2021.  (SUMF, RE 33, PageID # 763, ¶ 67.)  The severance agreement stated that "[i]f Employee signs this Agreement, [he] has seven (7) days to revoke the Agreement . . . . If Employee does not revoke this Agreement, it shall be in full force and effect and each party shall be obligated to its terms."  (*Id.*, ¶ 68.)  Cummins executed the severance agreement on October 1, 2021.  (*Id.*, ¶ 69.)  After Cummins signed it, Tennova mailed a severance check to Cummins.  (*Id.*, PageID # 763–64, ¶ 70.)  On October 20, 2021, Cummins mailed a letter to Owenby stating that he "decided not to take the severance package."  (*Id.*, PageID # 764, ¶ 71.)  Sometime thereafter, Cummins physically returned the severance check to Owenby.  (*Id.*, ¶ 72.)

Cummins attempted revocation was too late.  He signed the agreement on October 1, and he had seven days to revoke it.  He did not attempt to revoke it until October 20 — 19 days after signing it and 12 days past the deadline.  After he signed

it, Tennova performed under the contract by providing him with the severance check. The fact that Cummins turned the severance check back into Tennova does not change the fact that the parties had a contract, and under that contract, Cummins released the age discrimination claim he asserts. *See Henley v. Cuyahoga Cnty. Bd. of Mental Retardation & Dev. Disabilities*, 141 F. App'x 437, 443 (6th Cir. 2005) (party challenging settlement must show fraud or mutual mistake). There is no evidence of fraud or mutual mistake here. As a result, Cummins's lawsuit against Tennova should be dismissed on this basis as well.

The District Court did not reach this argument because it found that Appellants could not survive summary judgment on the merits of their ADEA claims. However, because Cummins waived any right to bring his ADEA claims here, if the Court does not affirm the District Court's decision on the merits of Cummins's ADEA claim, it should nevertheless hold that Cummins waived his right to bring his ADEA claims.

## CONCLUSION

In sum, the Court should affirm the District Court's judgment for three reasons. First, Appellants cannot establish the *prima facie* elements of their ADEA claims because they cannot show additional circumstantial evidence tending to indicate that Tennova singled out Appellants for impermissible reasons. Second, even if Appellants could establish a *prima facie* case, the District Court correctly held that Appellants cannot show that Tennova's legitimate, nondiscriminatory

reason for terminating them – the RIF – was pretextual.  Finally, as an independent basis for summary judgment, Cummins waived his right to assert his ADEA claim by executing an enforceable severance agreement that contained a valid waiver of his ADEA claim.

Respectfully submitted,

BRADLEY ARANT BOULT CUMMINGS LLP

<u>s/ John P. Rodgers</u>
John P. Rodgers
Joshua D. Kleppin
1221 Broadway, Suite 2400
Nashville, Tennessee 37203
P:  (615) 252-4642
F:  (615) 252-4708
jrodgers@bradley.com
jkleppin@bradley.com

*Attorneys for Appellee, Metro Knoxville HMA, LLC, d/b/a Tennova Healthcare*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that, pursuant to Federal Rule of Appellate Procedure 32(g), this brief contains 12,814 words and complies with Federal Rule of Appellate Procedure 32(a)(7)(A–B).

*/s/ John P. Rodgers*
John P. Rodgers

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 18, 2024, a copy of the foregoing was filed electronically.  Service will be made on all ECF-registered counsel by operation of the Court's electronic filing system.

*/s/ John P. Rodgers*
John P. Rodgers

# ADDENDUM

Complaint, RE 1, PageID # 1–17

Answer, RE 8, PageID # 33–39

Amended Answer, RE 22, PageID # 105–11

Defendant's Motion for Summary Judgment, RE 29, PageID # 138–41

      Myers Declaration, RE 29-1, PageID # 142–51

      Myers Deposition, RE 29-2, PageID # 153–236

      Sullivan Deposition, RE 29-3, PageID # 238–84

      Cummins Deposition, RE 29-4, PageID # 286–322

      Robertson Deposition, RE 29-5, PageID # 324–84

      Owenby Deposition, RE 29-6, PageID # 386–409

      Defendant's Response to Plaintiffs' First Set of Interrogatories, RE 29-8, PageID # 440–448

Plaintiffs' Response to Defendant's Motion for Summary Judgment, RE 32, PageID # 499–521

      Defendant's Response to Plaintiffs' First Set of Interrogatories, RE 32-9, PageID # 536–51

Plaintiffs' Response to Defendant's Statement of Undisputed Material Facts, RE 33, PageID# 741–69

Defendant's Reply to Plaintiffs' Response in Further Support of Defendant's Motion

for Summary Judgment, RE 34, PageID # 770–82

Memorandum Opinion & Order, RE 56, PageID # 878–94

Judgment, RE 57, PageID # 895

Notice of Appeal, RE 59, PageID #917–18