## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **DAVID SULLIVAN, DARLENE ROBERTSON, AND CHARLES CUMMINS, Individually and on behalf of others similarly situated,** | ) ) ) ) ) ) | |
| **Plaintiff-Appellants,** | ) ) | |
| **v.** | ) ) | No. 24-5531 |
| **METRO KNOXVILLE HMA, LLC dba Tennova Healthcare** | ) ) ) ) ) | *Appeal from the United States District Court for the Eastern District of Tennessee* |
| **Defendant-Appellee.** | ) ) ) | |

---

## REPLY BRIEF OF PLAINTIFF-APPELLANTS

---

JESSE D. NELSON (TN BPR # 025602)
CLINT J. COLEMAN (TN BPR # 038413)
NELSON LAW GROUP, PLLC
10263 Kingston Pike
Knoxville, Tennessee 37922
(865) 383-1053
*jesse@NLGattorneys.com*
*clint@nlgattorneys.com*

*Attorneys for Appellants*

ORAL ARGUMENT REQUESTED

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ..................................................................i

TABLE OF AUTHORITIES ........................................................ 1

ARGUMENTS IN REPLY ........................................................... 3

1. Appellants easily establish the elements of their prima facie case. . 3

2. Defendant misconstrues Appellants' arguments regarding the district court's failure to examine the evidence in its totality. ........ 6

   a. Myers' ageist comment, when viewed in conjunction with the other evidence of pretext, creates a question of fact as to whether the stated reason for termination was pretext for discrimination. .............................................................. 7

3. This Court should refrain from ruling on whether Cummins waived his ADEA claim because the district court did not rule on the issue. 12

4. To the extent this Court decides to rule on the issue, Cummins did not waive his ADEA claim. .......................................................... 13

CONCLUSION ...........................................................................17

CERTIFICATE OF COMPLIANCE ............................................ 18

CERTIFICATE OF SERVICE...................................................... 19

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Ace Design Group, Inc. v. Greater Christ Temple Church, Inc.*,
    No. M2016-00089-COA-R3-CV, 2016 WL 7166408 (Tenn. Ct. App.
    Dec. 8, 2016) ...................................................................................... 16

*Adv. Disposal Servs. Tenn. Holdings, Inc. v. Lusk Disposal Servs., Inc.*,
    478 F.Supp.3d 716 (E.D. Tenn. 2020) ................................................ 16

*Barnes v. GenCorp Inc.*,
    896 F.2d 1457 (6th Cir. 1990) ............................................................ 3

*Bevan v. Honeywell, Inc.*,
    118 F.3d 603 (8th Cir.1997)................................................................ 9

*Bittinger v. Tecumseh Products Co.*,
    83 F. Supp. 2d 851 (E.D. Mich. 1998) ................................................ 13

*Cline v. Catholic Diocese of Toledo*,
    206 F.3d 651 (6th Cir. 2000) .............................................................. 4

*Conway v. Electro Switch Corp.*,
    825 F.2d 593 (1st Cir.1987) ................................................................ 9

*Dennis v. Columbia Colleton Medical Center, Inc.*,
    290 F.3d 639 (4th Cir. 2002) .............................................................. 7

*Stefanac v. Cranbrook Educational Comm.*,
    435 Mich. 155, 458 N.W.2d 56 (Mich. 1990)..................................... 14

*Ercegovich v. Goodyear Tire & Rubber Co.*,
    154 F.3d 344 (6th Cir. 1998) .............................................................. 9

*Freed v. Thomas*,
    976 F.3d 729 (6th Cir. 2020)............................................................... 12

*Goldman v. First Nat. Bank of Boston*,

985 F.2d 1113 (1st Cir. 1993) ................................................................ 7

*Grano v. Dep't of Dev. of Columbus,*
  699 F.2d 836 (6th Cir.1983)................................................................ 5

*Herring v. Thompson,*
  2003 WL 23590541 (D. Md. May 12, 2003)........................................ 7

*Hill v. Snyder,*
  878 F.3d 193 (6th Cir. 2017)............................................................. 12

*Johnson v. Franklin Farmers Co-op,*
  378 Fed. App. 505 (6th Cir. 2010).................................................. 3, 4

*Maldonado v. National Acme Co.,*
  73 F.3d 642 (6th Cir.1996) .............................................................. 12

*Oubre v. Entergy Operations, Inc.,*
  522 U.S. 422, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998)......................... 14

*Perez v. Aetna Life Ins. Co.,*
  150 F.3d 550 (6th Cir. 1998) ........................................................... 12

*Provenzano v. LCI Holdings, Inc.,*
  663 F.3d 806 (6th Cir. 2011) .............................................................. 4

*United States v. Gomez,*
  877 F.3d 76 (2d Cir. 2017)............................................................... 12

*Wittorf v. Shell Oil Co.,*
  37 F.3d 1151 (5th Cir.1994)............................................................. 14

## <u>ARGUMENTS IN REPLY</u>

**1.    Appellants easily establish the elements of their prima facie case.**

Defendant disagrees with the lower court's finding that Appellants satisfied their prima facie burden. (Appellee's Brief, Doc. 15, Page # 33). Specifically, Defendant takes issue with the district court's finding that evidence that raises suspicion that age was the cause of termination is sufficient to meet Plaintiffs' prima facie burden. (*Id.* at Page # 41). But in cherry-picking words to be upset with, Defendant completely ignores the court's citation to Sixth Circuit precedent on the issue. (RE 56, Page ID # 886) (citing *Johnson v. Franklin Farmers Co-op*, 378 Fed. App. 505, 509-510 (6th Cir. 2010) (emphasis added by the district court), stating that in "reduction-in-force cases, 'the purpose of the additional evidence requirement is to ensure . . . that the plaintiff has presented evidence to show that there is a *chance* the reduction in force is not the reason for the termination.'").

The lower court, in citing another Sixth Circuit case, noted that "a plaintiff could establish a prima facie case by showing . . . that the employer made statements indicative of a discriminatory motive." (RE 56, Page ID # 886) (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1464 (6th Cir. 1990)).

Here, Kevin Myers made such a statement when he told Larry Rupard

not to hire an older worker and that he "had enough old people." (RE 32-13, Page ID # 687). At the time this comment was made, Myers knew that a RIF was to be conducted. (Myers Depo., p. 16, RE 32-11, Page ID # 586). This means that Myers's animus towards older workers existed at the time of the RIF. *See Diebel*, 492 F. App'x at 530–31 (noting a boss's comments, "even if not direct evidence of discrimination, are circumstantial evidence of age discrimination"). Moreover, Myers' comment showed his bias against older workers in making personnel decisions. This is indicative of age discrimination and certainly sufficient to show that there is a *chance* the reduction in force is not the reason for the termination. *Johnson v. Franklin Farmers Co-op*, 378 Fed. App. at 509-510.

The prima facie burden is intended "to eliminate the most common nondiscriminatory reasons for the employer's action." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011). A plaintiff's "burden at the prima facie stage is 'not onerous' and 'poses a burden easily met.' " *Id.* (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000)).

Here, Plaintiffs have shown that the decision maker in the decision to terminate them had previously made an ageist comment regarding a personnel decision during the time period in which he was considering the

RIF. This is certainly sufficient to meet the non-onerous burden of showing that there is a chance Myers terminated Plaintiffs because of their age.

But, as set forth in their opening Brief, Plaintiffs do not rely solely on Myers' comments to meet their prima facie case. Myers' demonstrated animus towards older workers could certainly lead a jury to believe that Defendant's use of subjective metrics in its RIF was used to disguise Myers' animus. *Grano v. Dep't of Dev. of Columbus*, 699 F.2d 836, 837 (6th Cir.1983) (The question "is whether the subjective criteria were used to disguise discriminatory action."). Subjective metrics "provide a ready mechanism for discrimination, permitting [] prejudice to affect and often control promotion and hiring decisions." *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, 690 F.2d 88, 93 (6th Cir. 1982).

In scoring Appellants using the subjective metrics, Myers states that he relied upon his personal experience with each employee, yet he acknowledges having limited personal interaction with Appellants. (RE 32-11, Page ID # 597-98, 588, 609). These subjective scores are ripe for discrimination, especially when conducted by a person who disfavors older workers and barely knows the employees being evaluated.

Based on this evidence, Appellants have satisfied their prima facie burden.

2. **Defendant misconstrues Appellants' arguments regarding the district court's failure to examine the evidence in its totality.**

Defendant asserts that the district court did examine the totality of the evidence and argues that Appellants have not shown any evidence that the district court overlooked. (Doc. 15, Page # 46). Defendant's misreading of Appellants' argument is shown when Defendant states, "Appellants made the same arguments to this Court that it [sic] made to the District Court. The District Court addressed *each of those arguments and rejected them.*" (*Id* at Page # 47) (emphasis added). This is the same basic misconception that plagued the lower court's analysis. Appellants did not raise individual "arguments" for the lower court to accept or reject. Appellants raised a series of facts that, when viewed *together, in their totality*, create an issue of fact as to whether Defendant's stated reason for termination is pretext.

"For a plaintiff to prevail on his ultimate burden, *the totality of the circumstances* must in each case create a reasonable inference that the employer's stated reasons *were a pretext for unlawful [age] discrimination.*" *Connell v. Bank of Boston*, 924 F.2d 1169, 1175 (1st Cir. 1991) (citing *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)) (first emphasis added, second in original). "At this stage of the *McDonnell Douglas* burden-shifting framework, we examine all evidence that the plaintiff has put forth—

6

evidence from the prima facie stage, 'evidence discrediting the defendant's proffered reason,' and 'any additional evidence the plaintiff chooses to put forth.'" *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 810 (6th Cir. 2020) (quoting *Blair,* 505 F.3d at 532 (6th Cir. 2007); *see also, Goldman v. First Nat. Bank of Boston*, 985 F.2d 1113, 1119 (1st Cir. 1993) ("Evidence of age animus "need not be of the 'smoking gun' variety," *but the totality of the circumstances must permit a reasonable inference that the employer's justification for the challenged action was a pretext for age discrimination.*") (citations omitted) (emphasis added); *Herring v. Thompson*, 2003 WL 23590541, at *6 (D. Md. May 12, 2003) (citing *Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d 639, 648 n.4 (4th Cir. 2002) ("[A Plaintiff] can also prove pretext by demonstrating that the *totality of circumstances* establishes that the defendant's proffered reason, although factually supported, was not the actual reason relied on, but was rather a false description of its reasoning manufactured after the fact.") (emphasis added) (cleaned up).

     a. <u>*Myers' ageist comment, when viewed in conjunction with the other evidence of pretext, creates a question of fact as to whether the stated reason for termination was pretext for discrimination.*</u>

Defendant continues its seemingly intentional mischaracterization of Appellants' argument by alleging that "[c]ontrary to Appellants' argument,

the District Court considered Myers's alleged comment as circumstantial evidence of age discrimination, and correctly determined that it was an 'isolated' comment that was 'unrelated to Plaintiffs' discharge,' and thus failed to satisfy Appellants' summary judgment burden." (Doc. 15, Page # 47-48).

But Appellants never argued that the district court failed to consider Myers' ageist comment. Appellants argue that the district court improperly viewed it in a vacuum, without considering the comment in the context of all other evidence presented. Defendant's own characterization of the district court's analysis highlights this error. *Id.* (characterizing the district court's analysis of the ageist comment, stating that the district court "correctly determined that *it* was and 'isolated' comment that was 'unrelated to Plaintiffs' discharge,' and thus failed to satisfy the Appellants' summary judgment burden.") (emphasis added). Appellants have never argued that Myers' comment, alone, was sufficient to create an issue of fact to survive summary judgment. But when viewed *alongside* all other evidence of pretext, the totality of the circumstances is sufficient to create a showing of pretext.

These comments, when viewed along with the other evidence presented, are exactly the type of evidence that could convince a jury that Defendant's stated reason for termination was pretext. *See Conway v. Electro*

8

*Switch Corp.*, 825 F.2d 593, 597 (1st Cir.1987) ("While evidence of a discriminatory atmosphere may not be conclusive proof of discrimination against an individual plaintiff, such evidence does tend to add 'color' to the employer's decision making processes and to the influences behind the actions taken with respect to the individual plaintiff."); *Bevan v. Honeywell, Inc.*, 118 F.3d 603, 610 (8th Cir.1997) ("[S]uch comments are surely the kind of fact which could cause a reasonable trier of a fact to raise an eyebrow, thus providing additional threads of evidence that are relevant to the jury." (quotations omitted)).

The lower court erred in isolating Myers' comment from the other evidence presented. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357 (6th Cir. 1998) (noting that the court must examine various factors affecting a statement's probative value, including "whether the statement buttresses other evidence of pretext."); *see also*, *Goldman*, 985 F.2d at 1119 ("Evidence of age animus "need not be of the 'smoking gun' variety," but the totality of the circumstances must permit a reasonable inference that the employer's justification for the challenged action was a pretext for age discrimination.") (citations omitted).

Defendant's use of subjective criteria in its RIF calls into question the motivations of the RIF when that subjective criterion is analyzed by a person

with demonstrated animosity towards older workers. The record reflects that Myers had limited experience and personal interaction with Appellants and many of the other employees listed. (Myers Depo., pp. 57-62, 24-25, RE 32-11, Page ID # 596-97, 588). Yet, he states that he relied upon his personal experience with each of the people listed to score the subjective metrics. (Myers Depo., p. 108, RE 32-11, Page ID # 609). Myers did not consult any prior managers or anyone else in compiling the numbers. *Id.* Myers did not consult any past performance evaluations or other performance indicators in compiling the scores. *Id.* This begs the question: how could Myers provide scores for metrics such as problem-solving ability, interactive skills and cooperation with coworkers, customer service, and reliability, when he has such limited personal knowledge or experience with Appellants? These subjective scores are ripe for discrimination. This is especially so when conducted by a person who barely knows the employees being evaluated and who has shown his dislike towards older workers.

It would not take a far reach for a jury to conclude that Myers used subjective scoring to single out older employees (who he barely knows) for termination because he disfavors them and has "enough old people."

Myers' use of subjective criteria to disguise his animosity towards older workers is on full display by the fact that every person terminated as part of

the RIF was over forty years of age. Defendant argues that "if Myers were indeed using subjective criteria to disguise discriminatory action . . . then Myers – the alleged ageist – would have terminated all of the oldest workers." (Doc. 15, Page # 55).

Indeed, Defendant wants credit for the fact that, according to Defendant, 77% of the retained employees were over forty years of age. (*Id* at Page # 56). But this ignores that 100% of the employees terminated as part of the RIF were over forty. It also ignores that 86% of Defendant's entity 8515 employees were over forty (22 retained employees, 17 of whom were over forty, plus 14 terminated employees, all of whom were over forty, equals 36 total employees, 31 of whom were over forty. 31 is 86% of 36). Defendant does not deserve credit for 77% of its retained employees being over forty when 86% of the selection pool was over forty. Especially considering that none of the employees selected for termination in the RIF were under forty.

It would not be far-fetched for a jury to believe that Kevin Myers used subjective criteria to select among employees he barely knew to disguise his discriminatory intent – shown by his own words – and uncoincidentally selected exclusively older workers to be terminated.  Plaintiffs are entitled to such an inference.

3.    **This Court should refrain from ruling on whether Cummins waived his ADEA claim because the district court did not rule on the issue.**

Defendant argues that Cummins' claim should be dismissed because he waived his claim. Defendant made the same argument before the district court and the district court did not rule on the issue. (RE 56). Defendant acknowledged as much in its Brief. (Doc. 15, Page # 65). Because the lower court did not rule on the issue, this Court should not address it. "While this court has exercised discretion to decide issues on appeal that were not addressed by the district court, *see Hill v. Snyder*, 878 F.3d 193, 213 (6th Cir. 2017), 'typically,' we 'will not address issues unless ruled upon by the trial court below.'" *Freed v. Thomas*, 976 F.3d 729, 741 (6th Cir. 2020) (quoting *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 554–55 (6th Cir. 1998); *Maldonado v. National Acme Co.*, 73 F.3d 642, 648 (6th Cir.1996) (declining to rule upon collateral estoppel issue not addressed by the district court) s*ee also, United States v. Gomez*, 877 F.3d 76, 92 (2d Cir. 2017) ("We generally refrain from considering issues not decided by the district court.").

The district court is in the best position to rule on the issue of whether or not Cummins waived his ADEA claim because it is most familiar with the evidence in the record. *Freed*, 976 F.3d at 741. This Court should decline to

address the issue.

**4.    To the extent this Court decides to rule on the issue, Cummins did not waive his ADEA claim.**

Defendant argues that Mr. Cummins has waived his ADEA claim. Defendant argues that once the revocation period expires, the severance agreement is enforceable. (RE 30, Page ID # 472). Defendant cites no case law to support its proposition, and Defendant's argument oversimplifies the facts.

In *Bittinger v. Tecumseh Products Co.*, 83 F. Supp. 2d 851, 871 (E.D. Mich. 1998), the court cited a Fifth Circuit opinion on the issue of revocation and tendering back severance monies. In that case, the defendant as part of a reduction in force offered certain employees the opportunity to voluntarily terminate their employment in exchange for enhanced severance benefits. In exchange for the plaintiff's acceptance of the severance package, he executed a release in favor of the defendant company. Later, the plaintiff challenged the terms of the severance package as violative the ADEA, the ADA, and ERISA and filed suit against the company without returning any of the benefits received under the terms of the severance package. In upholding the validity of the release, the Fifth Circuit stated:

When [the plaintiff] chose to retain and <u>not tender back</u>

> the enhanced severance benefits paid to him by Shell in consideration for his promise not to file claims against Shell, he manifested his intention to be bound by the Release and Settlement, thus making a new promise to abide by Shell's terms. It is that promise we can enforce.

*Wittorf v. Shell Oil Co.*, 37 F.3d 1151, 1154 (5th Cir.1994) (emphasis added). Similarly, the *Bittinger* court cited *Stefanac v. Cranbrook Educational Comm.*, 435 Mich. 155, 458 N.W.2d 56 (Mich. 1990), wherein the plaintiff executed a release in conjunction with the termination of her employment in which the plaintiff agreed to forego pursuit of any claims against her employer in exchange for severance pay. Later, plaintiff brought suit against the employer alleging the wrongful termination of her employment. The Court determined that plaintiff was precluded from bringing her claims as she executed the release in favor of the employer <u>and failed to tender the consideration provided for under the agreement before filing suit</u>. *Bittinger*, 83 F. Supp. 2d at 871 (citing *Stefanac v. Cranbrook Educational Comm.*, 435 Mich. 155).

Notably, the Supreme Court has held that the so-called "tender-back doctrine" does not apply in the context of a claim under the ADEA, and an employer cannot invoke the employee's failure to tender back as a way of excusing its own failure to comply. *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998). Because Mr. Cummins *did*

tender back the severance check, and Defendant accepted this tender, this is of no consequence and distinguishes this case from those cited by *Bittinger*.

Here, on October 1, 2021, Mr. Cummins signed the severance and left the meeting at which he had been terminated. (Cummins Depo., RE 32-10, Page ID # 560). Mr. Cummins was later mailed a check from Defendant. (RE. 31, Page ID # 494).

Subsequently, on October 20, 2021, Mr. Cummins sent a letter to Owenby revoking the severance agreement, stating that he had decided not to take the severance package along with the conditions associated with it, and that he did not intend to cash the check delivered to him. (RE 32-2). As a result of Mr. Cummins's letter, Owenby requested that he return the check he had received. (RE 32-3, RE 32-12, Page ID # 667). On October 29, 2021, Defendant received from Mr. Cummins the requested check. (RE 32-4). By all appearances, Defendant accepted the revocation and made no further mention of the severance until November 14, 2023.

In an attempt to thwart Mr. Cummins's lawsuit and reject his revocation from over two years prior, counsel for Defendant sent a letter to counsel for Plaintiffs on November 14, 2023 (over two years after Mr. Cummins's revocation) enclosing a check in the net amount of $1,858.83 after taxes to Mr. Cummins, supposedly in exchange for his October 1, 2021,

execution of the severance agreement. (RE 32-6). On November 16, 2023, counsel for Plaintiffs emailed counsel for Defendant informing that Mr. Cummins had revoked his execution of the severance agreement, which was valid even after the deadline because it was accepted by Defendant, and that Mr. Cummins would reject the renewed attempt to provide consideration (i.e., the check). (RE 32-7).

In sum, Mr. Cummins effectively revoked his waiver of claims under the ADEA by tendering the check back to Defendant, and such revocation was accepted by Defendant. Mr. Cummins renewed his revocation when he refused Defendant's attempt to hinder this lawsuit by presenting him with another check which purported to be for his execution of the severance agreement. Simply put, Mr. Cummins has received no consideration from Defendant sufficient to waive his rights under the ADEA. *See Advanced Disposal Services Tennessee Holdings, Inc. v. Lusk Disposal Services, Inc.*, 478 F.Supp.3d 716, 921 (E.D. Tenn. 2020) (quoting *Ace Design Group, Inc. v. Greater Christ Temple Church, Inc.*, No. M2016-00089-COA-R3-CV, 2016 WL 7166408, *7 (Tenn. Ct. App. Dec. 8, 2016) ("In Tennessee, '[a] valid, enforceable contract requires consideration and mutual assent, manifested in the form of an offer and an acceptance.' ").

## <u>CONCLUSION</u>

Defendant cannot meet its burden of showing that no reasonable juror could conclude that Appellants were terminated because of their age. The evidence shows that Kevin Myers had enmity in his heart towards older workers at the time he was planning or conducting a RIF. Kevin Myers was also the sole decision maker responsible for completing scoring of subjective metrics of employees with whom he had little interaction. Uncoincidentally, every single employee who was selected for the RIF was over forty years of age, which is in line with Myers's feelings toward having too many old people. Because Defendant cannot meet its burden, summary judgment is improper. As such, Appellants respectfully request that this honorable Court REVERSE the lower court's decision granting summary judgment and REMAND such that issues of disputed fact may be assessed by the trier of fact.

RESPECTFULLY SUBMITTED,

<u>*s/ Clint J. Coleman*</u>
JESSE D. NELSON (BPR # 025602)
CLINT J. COLEMAN (BPR # 038413)
NELSON LAW GROUP, PLLC
10263 Kingston Pike
Knoxville, TN 37922
(865) 383-1053
jesse@NLGattorneys.com
clint@NLGattorneys.com

*Attorneys for Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32 (a)(7)(C) of the Federal Rules of Appellate Procedure, the undersigned certifies that the countable portion of Appellant's Brief contains approximately 3,256 words in a proportional font.

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing Brief of Appellant was served via the Appellate Court's ECF Filing System on all parties directed and authorized to receive such service, as shown on the ECF filing receipt. Dated: October 1, 2024.

 _s/ Clint J. Coleman_
Attorney for Appellants

# ADDITIONAL DESIGNATION OF DISTRICT COURT DOCUMENTS

1. Letter from Charles Cummins to Kristie Owenby, RE 32-2, Page ID # 525.

2. October 28, 2021, email from Kristie Owenby to Portia Stipes, RE 32-3, Page ID # 526.

3. Written statement by Portia Stipes, RE 32-4, Page ID #527.

4. November 14, 2023, letter from Defendant's Counsel to Plaintiffs' Counsel, RE 32-6, Page ID # 530-532.

5. November 16, 2023, email from Plaintiffs' Counsel to Defendant's Counsel, RE 32-7, Page ID # 533.

6. Excerpts from deposition of Charles Cummins, RE 32-10, Page ID # 552-581.